## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

LOURDES E. TRUJILLO,

        Plaintiff,

vs.                                                                                  No. CIV-02-1509 JB/RLP

BOARD OF EDUCATION OF THE
ALBUQUERQUE PUBLIC SCHOOLS, and
ANTHONY GRIEGO, Individually and
In his Official Capacity as Principal of
Valley High School, Albuquerque Public
Schools,

        Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on: (i) the Defendants' Motion for Summary

Judgment, filed February 18, 2004 (Doc. 54); and (ii) Plaintiff's Motion for Summary Judgment and

Memorandum Brief, filed February 12, 2004 (Doc. 47). The primary issue is whether the Defendants

Albuquerque Public Schools ("APS") and Anthony Griego (collectively, "the Defendants") have

demonstrated that there is no genuine issue as to their three nondiscriminatory reasons for not hiring

Trujillo and that they are entitled to a judgment as a matter of law. Because the Court finds that

Trujillo has shown that there is a genuine issue whether one of the Defendants' three reasons for not

hiring her is pretext, and that this pretextual reason is enough to cast doubt on the Defendants' other

two nondiscriminatory reasons, the Court will deny the Defendants' Motion for Summary Judgment.

Given that a genuine issue of material fact exists in this case, the Court will also deny the Plaintiff's

Motion for Summary Judgment.

## FACTUAL BACKGROUND

In 2000, Anthony Griego was principal of Valley High School ("VHS"), Colonel Richardson Crook was Senior Aerospace Science Instructor ("SASI") at the school, and Transito Trujillo was the Aerospace Science Instructor ("ASI"). See Deposition of Lourdes Trujillo at 104:3-7; 105:18-24 (taken June 4, 2003)(hereinafter "Trujillo Depo."); Affidavit of Anthony Griego ¶ 11, at 3 (executed October 16, 2003)(hereinafter "Griego Aff."). As early as January 2000, Crook informed Transito Trujillo that he was thinking of retiring. See Affidavit of Transito Trujillo ¶ 3, at 1 (executed March 10, 2004)(hereinafter "Transito Trujillo Aff."). Crook did not specify, however, when he would retire. See id.

Lourdes Trujillo, Transito Trujillo's wife, contends that she applied for the SASI position at VHS in August 2000, when she learned that Crook intended to retire. See Affidavit of Lourdes Trujillo ¶ 1, at 1 (executed March 12, 2004)(hereinafter "Trujillo March 12, 2004 Aff."). See also Transito Trujillo Aff. ¶ 5, at 1. Trujillo alleges that she submitted her resume and other documents to Griego. See Trujillo March 12, 2004 Aff. ¶ 1, at 1. She alleges that she told him she was born, raised, and educated in Puerto Rico and speaks Spanish fluently. See id.

Trujillo maintains that Griego interviewed her over the phone and was impressed with her qualifications. See Affidavit of Lourdes Trujillo Aff. ¶ 4, at 2 (executed November 21, 2003)(hereinafter "Trujillo November 21, 2003 Aff."); Trujillo Depo. at 123:3-6.[1] Trujillo contends

---

[1] Trujillo objects to the partial introduction of her deposition because she did not have the opportunity to review the entire deposition, correct mistakes, or sign it. See Pro Se Plaintiff's Response to Defendants Motion for Summary Judgment ¶ 2, at 2, filed March 15, 2004 (Doc. 64). The local rules, however, limit to 50 the number of pages of exhibits that a party may attach to a motion. See D.N.M. LR-Civ. 10.5. This limitation often requires and certainly encourages parties to submit only the relevant portions of a deposition, and then to highlight the sentences in these pages that are most relevant. Trujillo has not argued that the partial introduction of her deposition is

that Griego promised to consider her for the SASI position.  <u>See</u> Trujillo March 12, 2004 Aff. ¶ 1, at 1.  Griego does not recall interviewing Trujillo in the fall of 2000.  <u>See</u> Griego Aff. ¶ 3, at 1.[2]  The first meeting Griego recalls having with Trujillo was during the summer of 2001, when Trujillo approached him about Crook's former position.  <u>See id.</u> ¶ 3, at 1.  Trujillo contends that, at this 2001 meeting, Griego admitted to her that he had read her resume, that she was on the list (presumably of possible candidates for the SASI position), but that he did not select her because she did not have a pilot's endorsement.  <u>See</u> Trujillo March 12, 2004 Aff. ¶ 5, at 2

Before submitting her resume to Griego, Trujillo did not contact APS Human Resources to inquire about the steps for applying for positions within the district.  <u>See</u> Trujillo Depo. at 129:2-13. Trujillo did not complete an Application for Teacher/Licensed Position.  <u>See id.</u> at 121:12 - 125:16.

In the spring of 2001, Crook contacted Griego and informed him that he had been diagnosed with a serious medical condition.  <u>See</u> Griego Aff. ¶ 5, at 2.  At that time, Crook informed Griego

---

confusing or misleading.  Thus the Court concludes the partial introduction of Trujillo's deposition is proper.  Trujillo has not indicated that she requested an opportunity to review and sign the transcription of her testimony as rule 30(e) of the Federal Rules of Civil Procedure requires.  Even if she had requested an opportunity to review and sign the transcription, there is no indication that she was not notified that the transcription was available or that she attempted to review it.  Trujillo also does not point out any error or inaccuracies in the transcription of her deposition. The Court will therefore overrule the objection and consider the portion of the deposition in the record before the court.

[2] Trujillo objects to the introduction of Griego's affidavit "because he lied."  Pro Se Plaintiff's Response to Defendant's Motion for Summary Judgment, at 3, filed March 15, 2004 (Doc. 64).  This motion, however, is not the appropriate stage for the Court to determine a witness' credibility, and thus the Court will not consider whether Griego lied.  While the Court will consider whether the record shows that there is a dispute about the accuracy of Griego's statement, the Court will not resolve that dispute, if any, on this motion.  <u>See</u> <u>Plotke v. White</u>, 405 F.3d 1092, 1094 (10th Cir. 2005)("'Credibility determinations [and] the weighing of the evidence . . . are jury functions, not those of a judge.'" (quoting <u>Stinnett v. Safeway, Inc.</u>, 337 F.3d 1213, 1216 (10th Cir. 2003)).  The Court will thus overrule Trujillo's objection and consider the affidavit.

that he would retire in October 2001.  See id.  Griego contends that he and Crook worked with Air Force JROTC headquarters at Maxwell Air Force Base in Alabama to identify qualified individuals with an interest in the SASI position at VHS.  See id. ¶ 7, at 2.

The Air Force sets the minimum requirements for the SASI position.  See Defendants' Motion for Summary Judgment ¶ 8, at 5; Pro Se Plaintiff's Response to Defendants Motion for Summary Judgment ¶ 8, at 5, filed March 15, 2004 (Doc. 64).  A SASI must possess a baccalaureate or higher degree; be a retired Air Force officer with a minimum of 15 years extended active duty; be a retired 4 years or less when hired, which may be waived for 1 year "if the applicant is otherwise exceptionally well qualified"; and have served the last year of active duty as an officer.  See AFOATS Instruction 36-2004 § 1.2.1.2 (December 3, 1999).

In addition to his duties as the SASI, Crook taught a zero-hour Enriched Aerospace Science class at VHS.  See Barbara Lynn Letter at 1 (executed May 15, 2002).  It was Griego's understanding from discussions with Crook that the zero-hour class required an instructor that had a Federal Aviation Administration ("FAA") Certification and who had been either a navigator or a pilot while on active duty with the Air Force.  See id. at 2; Griego Aff. ¶¶ 6, 10, at 2-3.

Griego asserts that, shortly after Crook and Griego began the process of working with the Air Force to identify qualified individuals, Crook advised Griego that he had the names of two qualified individuals to interview for the position.  See id. ¶ 7, at 2.  According to Griego, Trujillo was not one of the names that Crook provided to him.  See id.  Griego interviewed one applicant by telephone. See id. ¶ 8, at 2.  Another applicant, Colonel Mark Mayerstein, went to VHS to interview for the position.  See id.

In Mayerstein's affidavit to the Equal Employment Opportunity Commission ("EEOC"),  he

stated that he began the process for selection at APS by applying with Headquarters, Air Force ROTC.  See EEOC Affidavit of Mark A. Mayerstein ¶ 1, at 1 (hereinafter "Mayerstein Aff."). Mayerstein was given a general interview at VHS.[3]  See id.  Crook later interviewed Mayerstein and informed him that he should notify ROTC Headquarters and Griego if he was interested in the VHS position.  See id.  Crook told Mayerstein not to mention the vacancy because it had not yet been advertised.  See id.

On February 15, 2001, Mayerstein completed an APS Application for Teacher/Licensed Position.  See Mayerstein's APS Application for Teacher/Licensed Position at 1 (dated February 15, 2001).  Mayerstein stated that he became aware of possible employment with APS from "Mr. Griego, Principal, Valley H.S." Id.  He also stated:  "Of primary interest to APS, is that I'm a retired Air Force Lt. Colonel with an aeronautical rating.  Also, I will be certified to teach the instrument ground school Colonel Crook has established for those students who want to pursue a private pilot's license." Id. at 4.

On January 25, 2001, Crook completed an Interview of AFJROTC Instructor Applicant form regarding Mayerstein.  See Interview of AFJROTC Instructor Applicant at 1 (January 25, 2001). Crook noted: "[Mayerstein] will soon be a Certified Advanced Ground School Instructor.  This will enable him to teach this very popular course." Id. at 2. Crook also stated: "I am very parochial about the program Chief [Transito] Trujillo and I have built.  If I were able to pick my replacement when I ultimately retire, I would be honored to pick this exemplary and highly motivated officer." Id.

On February 21, 2001, Crook completed an APS reference form, recommending that APS

---

[3] It is unclear from Mayerstein's affidavit who conducted the first interview.  Mayerstein states: "I was to interview with the Sr. SASI at Valley High School, Col. Crook, but he wasn't there when I first went and I first met with the Sr. SASI instructor." Mayerstein Aff. ¶ 1, at 1.

hire Mayerstein and noting that he had known Mayerstein's work from 2000 to 2001.  See APS Reference Form (February 26, 2004).  In his EEOC affidavit, however, Mayerstein stated that he did not know Crook before applying for the position.  See Mayerstein Aff. ¶ 3, at 2.

Griego interviewed Mayerstein and recommended him to John Miera, APS Human Resources Department.  See EEOC Affidavit of Anthony Griego ¶ 2, at 1 (hereinafter "Griego EEOC Aff.").  Miera offered the SASI position to Mayerstein with a hire date of October 1, 2001. See id. ¶ 2, at 2; Letter from John Miera to MSGT Vasser, HQ AFOATS-JRI at 1 (dated March 15, 2001).  On March 15, 2001, Miera sent a letter to the JROTC Headquarters indicating that Mayerstein would be replacing Crook.  See id.  On April 4, 2001, Brian King, Director, JROTC, sent a letter to Miera indicating that his "by-name request for Lieutenant Colonel Mark A. Mayerstein" was approved.  Letter from Brian King to John Miera at 1 (dated April 4, 2001).

## PROCEDURAL BACKGROUND

Trujillo filed a charge against the Defendants with the EEOC alleging gender and national origin discrimination in violation of Title VII.  See EEOC Determination Letter, at 1 (dated June 24, 2002).  The EEOC determined that there was probable cause to believe that the Defendants had discriminated against Trujillo because of her gender and Puerto Rican national origin.  See EEOC Determination Letter, at 1.

On December 2, 2002, Trujillo filed a complaint alleging discrimination in violation of Title VII and 42 U.S.C. § 1981.  See Complaint at 1, filed December 2, 2002 (Doc. 1).  Specifically, Trujillo alleged that the Defendants discriminated against her on the basis of gender and national origin.  See id. ¶¶ 9-33, at 4-8.  Trujillo also requested punitive damages against Griego for "reckless indifference to [Trujillo's] federally protected rights."  Id. ¶ 36, at 8.  On May 2, 2003, the

Defendants filed an answer denying that they had engaged in unlawful discrimination.  See Answer ¶¶ 8-21, at 2-4.  The Defendants also denied Trujillo's demand for punitive damages.  See id. ¶¶ 22-25, at 4.

On October 21, 2003, the Defendants moved for summary judgment on  the claims asserted against Griego in his individual capacity because of the defense of qualified immunity.  See Motion for Summary Judgment, filed October 21, 2003 (Doc. 26).  Trujillo filed a motion for summary judgment on February 12, 2004.  See Plaintiff's Motion for Summary Judgment and Memorandum Brief, filed February 12, 2004 (Doc. 47).

The Defendants filed a motion for summary judgment on all claims on February 18, 2004, arguing that Trujillo had not established a prima facie case of discrimination and that there was no genuine issue that the Defendants had legitimate, nondiscriminatory reasons for not hiring Trujillo.  See Defendants' Summary Judgment Motion at 6-10.  In particular, the Defendants contend that Trujillo was not qualified for the SASI position because she had been retired for six years, in excess of the maximum number of years in retirement allowed by the Air Force.  See id. at 6-7.  Also, the Defendants argue that there was no vacancy in the SASI position when Trujillo applied in 2000 and Trujillo failed to submit an official application for the position once an opening actually appeared.  See id.

As for legitimate, nondiscriminatory reasons for hiring Mayerstein and not Trujillo, the Defendants point to three justifications: (i) Griego understood that the SASI had to be a pilot or a navigator and possess an FAA certification and Trujillo was neither a pilot nor a navigator and did not have an FAA certification; (ii) Crook did not provide Trujillo's name to Griego as one of the persons to interview for the position; and (iii) Trujillo could not have held the position because it

would have required her to supervise her husband, which APS and Air Force Policy prohibits.  <u>See</u> <u>id.</u> 7-10.

In response, Trujillo asserts that she in fact submitted her application to Griego for the SASI position, which he then considered.  <u>See</u> Pro Se Plaintiff's Response to Defendant's Motion for Summary Judgment at 9, filed March 15, 2004 (Doc. 64).  She further maintains that an application for the position was not required and that Griego accepted her resume, interviewed her, and promised to consider her for the position.  <u>See</u> <u>id.</u> at 2.  Trujillo alleges that she had a waiver from the Air Force and thus met all of the Air Force's requirements.  <u>See</u> <u>id.</u>  Trujillo explains that the only mandatory requirement to teach the class is FAA certification, and that Mayerstein did not possess this certification, rendering him ineligible to teach the class.  <u>See</u> <u>id.</u> at 5, 10.  She states that Crook told her that "the only input [Crook] had is . . . [Griego] called and said, what do you think of this guy [sic]."  <u>Id.</u> at 4.  Even if Crook had given Griego a list of two names which did not include Trujillo's name, Trujillo points out that Griego already had her name from her application to consider her for employment.  <u>See</u> <u>id.</u> at 11.  Trujillo also contends that her husband would have resigned or obtained other APS employment if she had obtained the SASI position.  <u>See</u> <u>id.</u> at 5.

In their Reply, the Defendants insist that Trujillo has not made out a prima facie case of discrimination, highlighting that Trujillo would have been retired for six years  when she purportedly applied in 2000, which is a year longer than the Air Force allows even if it grants a waiver.  <u>See</u> Reply in Support [sic] Defendants' Motion for Summary Judgment at 8 ("Reply"), filed March 24, 2004 (Doc. 66).  In addition, the SASI position was not vacant when Trujillo allegedly applied.  <u>See</u> <u>id.</u> at 8-9.  Furthermore, Trujillo apparently never formally applied for the position.  <u>See</u> <u>id.</u> at 9.

As for the legitimate, nondiscriminatory reasons they have set forth, the Defendants state that

they believed, when they hired Mayerstein, that he would be certified to teach the class.  See id. at

10.  Moreover, Griego allegedly made his decision to hire Mayerstein based on the list provided by

Crook and Crook's recommendation of Mayerstein.  See id.  Finally, the Defendants express their

belief that they could not have hired Trujillo for a position entailing supervisory responsibilities over

her husband without ignoring and violating Air Force regulations.  See id. at 11.

Trujillo filed her own motion for summary judgment on February 12, 2004.  Trujillo explains

that the facts clearly establish that the Defendants violated Title VII and § 1981 when they decided

not to hire her.  See Plaintiff's Motion for Summary Judgment and Memorandum Brief at 16-17.

In their Response, the Defendants object to Trujillo's use of taped conversations with Griego

because the tape "has never been provided to Defendants and has been improperly withheld by

Plaintiff and/or her former attorney."  See Response in Opposition to Plaintiff's Motion for Summary

Judgment at 2, filed February 27, 2004 (Doc. 58).  The Defendants also assert that Trujillo

improperly withheld the tape of her conversation with Crook and that, regardless, it is inadmissible

hearsay.  See id. at 2-3.  The Defendants argue that Trujillo's motion is devoid of analysis that applies

her list of undisputed material facts to the law.  See id. at 7-8.  Finally, the Defendants contend that

Trujillo cannot make a prima facie case of discrimination and that she cannot demonstrate that the

Defendants' three legitimate, nondiscriminatory reasons for not hiring her are pretext.  See id. at 9-12.

Trujillo responds that the Defendants had acquired a tape of the conversations from the

EEOC.  See Plaintiff's Prose [sic] Reply to Defendants' Response, filed March 12, 2004 (Doc. 63).

Trujillo alleges that Crook's statements are not hearsay because he "was a supervisor and conspired

with Griego to deny [her] the SASI position" and he had personal knowledge of the Defendants'

actions.  See id. at 2.  Trujillo maintains that Griego knew the requirement of being a pilot or

navigator was "bogus," and that he knew that Mayerstein was not FAA certified before Mayerstein started work.  Id. at 3-5.

### STANDARD FOR DECIDING MOTIONS FOR SUMMARY JUDGMENT

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  See also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The opposing party may not rest upon mere allegations and denials in the pleadings, but must set forth specific facts showing that there is a genuine issue for trial.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)(citing Fed. R. Civ. P. 56(e)).  An issue of fact is "genuine" if the evidence is significantly probative or more than merely colorable such that a jury could reasonably return a verdict for the non-moving party.  See id. at 249-50 (citations omitted).  Mere assertions or conjecture as to factual disputes are not enough to survive summary judgment.  See Branson v. Price River Coal Co., 853 F.2d 768, 771-72 (10th Cir. 1988). The Court may only consider admissible evidence when ruling on a motion for summary judgment.  See World of Sleep, Inc. v. La-Z-Boy Chair, Co., 756 F.2d 1467, 1474 (10th Cir. 1985)(citing Fed. R. Civ. P. 56(e)).

### LAW ON EMPLOYMENT DISCRIMINATION

Title VII of the Civil Rights Act provides that it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  Section 1981 provides:

All persons within the jurisdiction of the United States shall have the same right in

-10-

every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a).  "An individual who establishes a cause of action under § 1981 is entitled to both equitable and legal relief, including compensatory and, under certain circumstances, punitive damages." Johnson v. Ry. Express Agency, Inc., 421 U.S. 454, 460 (1975)(citations omitted).

In an employment discrimination case brought under either Title VII or § 1981, in the absence of direct evidence, the burden-shifting framework outlined in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), guides the analysis of a summary judgment motion.  See, e.g., Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1225 (10th Cir. 2000)("'While McDonnell Douglas involved a Title VII claim for failure to hire, the analytical framework it pioneered applies equally to claims brought pursuant to section 1981.'" (quoting Perry v. Woodward, 199 F.3d 1126, 1135 (10th Cir. 1999))); Drake v. City of Fort Collins, 927 F.2d 1156, 1162 (10th Cir. 1991)("Cases establish that, in racial discrimination suits, the elements of a plaintiff's case are the same, based on the disparate treatment elements outlined in McDonnell Douglas, whether that case is brought under §§ 1981 or 1983 or Title VII." (citations omitted)).  That framework applies to both gender and national origin discrimination claims.  See Munoz v. St. Mary-Corwin Hosp., 221 F.3d 1160, 1166 (10th Cir. 2000)(citing Perry v. Woodward, 199 F.3d at 1135); Bullington v. United Air Lines, Inc., 186 F.3d 1301, 1315-20 (10th Cir. 1999)(analyzing Title VII gender discrimination claim with McDonnell Douglas framework); Sanchez v. Denver Pub. Schs., 164 F.3d 527, 531 (10th Cir. 1998)(articulating the McDonnell Douglas framework as the standard for analyzing a Title VII gender discrimination claim).

Under the <u>McDonnell Douglas</u> analysis, a plaintiff must prove a prima facie case of discrimination.  <u>See</u> <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. at 802.  If the plaintiff carries her burden of establishing a prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its employment action.  <u>See</u> <u>id.</u>  If the defendant does so, the burden shifts back to the plaintiff to "present[] evidence that the defendant's proffered reason for the employment decision was pretextual -- i.e. unworthy of belief."  <u>Kendrick v. Penske Transp. Servs., Inc.</u>, 220 F.3d at 1230 (citations omitted).

To establish a prima facie case of discrimination in a failure to hire context, Trujillo  must demonstrate: (i) she is a member of a protected class; (ii) she applied for and was qualified for the SASI position; (iii) she was rejected despite her qualifications; and (iv) "the position remained open and the employer continued to seek applicants from persons of complainant's qualifications."  <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. at 802.

"Pretext can be shown by such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons."  <u>Morgan v. Hilti, Inc.</u>, 108 F.3d 1319, 1323 (10th Cir. 1997)(internal quotations omitted)(citations omitted).  "To avoid summary judgment, a party must produce *specific* facts showing that there remains a genuine issue for trial and evidence significantly probative as to any [material] fact claimed to be disputed.  Thus, plaintiffs' mere conjecture that their employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment."  <u>Branson v. Price River Coal Co.</u>, 853 F.2d at 771-72 (internal quotations omitted)(alteration in the original)(citations omitted).  "[J]ust because the

-12-

reasoning relied upon for a certain action is mistaken does not mean that the reason is pretextual." Randle v. City of Aurora, 69 F.3d 441, 455 (10th Cir. 1995). The court's "role is to prevent unlawful hiring practices, not to act as a super personnel department that second guesses employers' business judgments." Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs., 165 F.3d 1321, 1329 (10th Cir. 1999); Jones v. Barnhart, 349 F.3d 1260, 1267 (10th Cir. 2003).

"[A]s a general rule, an employee must proffer evidence that shows each of the employer's justifications are pretextual." Tyler v. RE/MAX Mountain States, Inc., 232 F.3d 808, 814 (10th Cir. 2000)(citing Wilson v. AM General Corp., 167 F.3d 1114, 1120 (7th Cir. 1999)). This rule is not rigidly applied, however, because "when the plaintiff casts substantial doubt on many of the employer's multiple reasons, the jury could reasonably find the employer lacks credibility." Id. (citing Chapman v. AI Transp., 229 F.3d 1012, 1049-51 (11th Cir. 2000)(Birch, J., concurring in part and dissenting in part)). As the Tenth Circuit has recognized, "'there may be cases in which the multiple grounds offered by the defendant . . . are so intertwined, or the pretextual character of one of them so fishy and suspicious, that the plaintiff may [prevail].'" Id. (quoting Wilson v. AM General Corp., 167 F.3d at 1120)(alteration in original).

## ANALYSIS

The Court has before it Trujillo's and the Defendants' separate motions for summary judgment. The Court will first address the Defendants' motion, followed by Trujillo's motion. While often, when there are cross motions for summary judgment, there is a concession that there is no genuine issue of material fact, here each side contends issues of fact preclude the Court from granting judgment for the other party. In this case, both parties are correct: genuine issues of material fact prevent the Court from granting either side summary judgment.

-13-

## I.   THE DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON TRUJILLO'S TITLE VII AND § 1981 DISCRIMINATION CLAIMS.

Trujillo has established a prima facie case of discrimination.  The Defendants have responded by stating three legitimate, nondiscriminatory reasons for not hiring Trujillo.  Trujillo has not shown a genuine issue of material fact as to two of these reasons.  The genuine issue that Trujillo has shown on the remaining reason casts enough doubt on the Defendants' case to allow Trujillo to survive summary judgment.

### A.   TRUJILLO HAS ESTABLISHED A PRIMA FACIE CASE OF DISCRIMINATION.

The Defendants move the Court for summary judgment, arguing that Trujillo cannot establish a prima facie case of gender or national origin discrimination.  <u>See</u> Defendants' Motion for Summary Judgment at 6-7.  To satisfy her burden of putting forth a prima facie case, Trujillo must show that: (1) she is a member of a protected class; (2) she applied for and was qualified for the SASI position; (3) she was rejected despite her qualifications; and (4) "the position remained open and the employer continued to seek applicants from persons of complainant's qualifications."  <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. at 802. The Defendants assert that Trujillo cannot meet the second requirement because she was not qualified for the SASI position and she never applied for the job. <u>See</u> Defendants' Motion for Summary Judgment at 6-7.

APS argues that the Air Force requires that the SASI instructor not be retired from active duty for more than four years (or five if a waiver is granted) at the time an instructor is hired.  <u>See id.</u>  Because Trujillo retired from active duty in 1994 and she alleges she applied for the SASI opening at VHS in 2000, the Defendants argue that she had been retired for six years and therefore was not qualified for the job.  <u>See id.</u>

-14-

Trujillo offered evidence, however, that she had a valid waiver from the Air Force that excused her from the four-year maximum retirement period.  See Trujillo Depo. at 98:4 - 102:25; Trujillo March 12, 2004 Aff. ¶ 6, at 2.  Moreover, a school in Georgia hired Trujillo for its SASI position.  See Trujillo March 12, 2004 Aff. ¶ 6, at 2.  Trujillo has thus presented sufficient evidence that Trujillo was qualified for the SASI position.

The Defendants assert that Trujillo did not apply for the SASI position because: (i) there was no opening for the SASI position when Trujillo interviewed with Griego in August of 2000; and (ii) Trujillo never formally applied for the position once it became available because she did not submit an application to APS.  The first reason does not contradict that Trujillo applied for the position.  As for the second reason, Trujillo offered evidence that she applied for the SASI position in August 2000.  See id. ¶ 1, at 1.  Trujillo also offered evidence that Griego accepted her application and promised to consider it.  See id.  Interpreting the facts in the non-moving party's favor, the Court concludes that there is sufficient evidence to show a genuine issue of material fact whether Trujillo applied for the SASI position.

APS does not dispute that Trujillo has satisfied the other elements of a prima facie case.  The Court thus concludes that Trujillo has sufficient evidence to establish a prima facie case of discrimination.

## B.   THE DEFENDANTS HAVE ARTICULATED LEGITIMATE, NON-DISCRIMINATORY REASONS FOR THE DECISION.

The Defendants have articulated three legitimate, non-discriminatory reasons for not hiring Trujillo.  They contend that: (i) Griego understood that the SASI had to be a pilot or a navigator and possess an FAA certification, and Trujillo was neither a pilot nor a navigator and did not have an FAA certification; (ii) Crook did not provide Trujillo's name to Griego as one of the persons to

-15-

interview for the position; and (iii) Trujillo could not have held the position because it would have required her to supervise her husband, which APS and Air Force Policy prohibit. <u>See</u> Defendants' Motion for Summary Judgment at 7-10.  Given that the Defendants have articulated legitimate, nondiscriminatory reasons for not hiring Trujillo, Trujillo must establish a genuine issue of material fact whether these legitimate, non-discriminatory reasons are pretext to survive the Defendants' motion for summary judgment.

### C.   TRUJILLO HAS NOT PRESENTED EVIDENCE THAT TWO OF THE DEFENDANTS' THREE PROFFERED REASONS FOR NOT HIRING HER ARE PRETEXT.

Trujillo must present evidence creating a genuine issue of material fact whether the Defendants' three proffered reasons for the employment decision were pretextual - i.e. unworthy of belief.  <u>See</u> <u>Kendrick v. Penske Transp. Servs., Inc.,</u> 220 F.3d at 1230 (citations omitted).  Mere conjecture that the Defendants' explanation is a pretext for discrimination is insufficient.  <u>See</u> <u>Branson v. Price River Coal Co.,</u> 853 F.2d at 771-72.  The Court concludes that Trujillo has established a genuine issue of material fact only on the Defendants' second reason for not hiring her, but not on the first and third reasons.

### 1.   Trujillo Has Not Presented Evidence that the Defendant's First Non-Discriminatory Reason is Pretext.

The Defendants assert that Griego understood that the SASI had to be a pilot or a navigator and possess an FAA certification.  <u>See</u> Defendants' Motion for Summary Judgment at 8.  In his affidavit, Griego explains:  "It was my understanding from discussions with Col. Crook that the zero hour Enriched Aerospace Science class that we offered at Valley High School required an instructor who had been either a navigator or a pilot while on active duty with the Air Force."  Griego Aff. ¶ 6, at 2.  Trujillo also recounts this as one of the reasons Griego gave her for not hiring her:

> Griego told me that he did not select me because I was not a pilot and I objected because this is not a requirement of the position. He said it was for the flight course so the students would get credit. I told him the course was not a requirement. He insisted it was.

Trujillo March 12, 2004 Aff. ¶ 3, at 2-3.

Trujillo argues that the Defendants' first non-discriminatory reason fails on several grounds. She argues that she could have taught the class because Mayerstein taught the class without an FAA certification and she could have done the same. See Pro Se Plaintiff's Response to Defendant's Motion for Summary Judgment at 9, 11. Assuming this to be true, Trujillo does not present evidence that contradicts Griego's understanding -- perhaps mistaken -- that the SASI had to be a pilot or a navigator and possess an FAA certification, and his contention that he did not select Trujillo because she was neither a pilot nor a navigator and did not have an FAA certification. See Barbara Lynn Letter at 2; Griego Aff. ¶¶ 6, 10, at 2-3. Trujillo's argument that she could have taught the class because Mayerstein taught it does not establish a genuine issue as to whether the reason Griego gave for not hiring her was pretext.

Trujillo also contends that the FAA certification requirement is pretext because Griego knew Mayerstein was not FAA certified. See Pro Se Plaintiff's Response to Defendant's Motion for Summary Judgment at 11. Trujillo argues that Griego knew that Mayerstein did not have FAA certification because Transito Trujillo informed Griego in June 2001 that Mayerstein did not have FAA certification. See id. at 11; Transito Trujillo Aff. ¶ 10, at 2. In his affidavit, however, Griego states:

> I did not learn until October 2001 that Col. Mayerstein needed to take a test for FAA ground school certification in connection with the zero hour class. Col. Mayerstein indicated that he would need to get this certification if students wanted to apply this course toward completion of a private pilot's license. It was my understanding that, absent the FAA certification, Col. Mayerstein was nevertheless qualified to teach the

> course for high school credit only. This did not pose a problem, as the zero hour class
> was offered as a way for JROTC students to receive additional elective credit towards
> their high school diploma. In any event, Col. Mayerstein told me that he would have
> his FAA certification by the end of the school year.

Griego Aff. ¶ 3, at 1. Even if the Court assumes that Griego became aware of Mayerstein's FAA

certification status before October 2001, Trujillo has not presented evidence that Griego hired

Mayerstein in spite of the FAA certification requirement. Instead, the evidence indicates that, when

Griego hired Mayerstein, he believed Mayerstein would have the FAA certification needed to teach

the zero hour class by the time Mayerstein started work as the SASI at VHS. See Defendants'

Motion for Summary Judgment at 8; Mayerstein's APS Application for Teacher/Licensed Position

at 4.

Trujillo also argues that the Defendants' first non-discriminatory reason is pretext because the

SASI position does not require an instructor who has been a pilot. See Pro Se Plaintiff's Response

to Defendant's Motion for Summary Judgment at 9-10. This argument is misplaced, because, even

if the SASI position does not require that the instructor be a pilot, the evidence indicates that Griego

wanted to continue the zero-hour Enriched Aerospace Science class and believed he needed to hire

a person who had been a pilot to do so. See Barbara Lynn Letter at 2; Griego Aff. ¶¶ 6, 10, at 2-3.

The only evidence that Trujillo highlights to show that Griego did not believe that being a

pilot or navigator was a requirement is a conversation her husband had with Griego in May 2001, in

which Transito Trujillo explained that the SASI position did not require one to be a pilot. See Pro

Se Plaintiff's Response to Defendant's Motion for Summary Judgment at 9; Transito Trujillo Aff. ¶

9, at 2. Even so, this statement in Transito Trujillo's affidavit does not contradict that Griego

believed that being a pilot was a requirement in spite of Transito Trujillo's protestations to the

contrary. While the statement may color what Griego believed from May 2001 forward, it does not

prove anything about what Griego believed at the time the hiring decision was made back in March 2001.

Trujillo has not offered evidence, besides her own conjecture, that Griego did not believe being a pilot was a requirement.  In his explanations to Trujillo and his affidavits, Griego consistently indicates that he believed being a pilot was a requisite for the position he was filling.  See Griego Aff. ¶¶ 6, 10, at 2-3.  Even if Griego was mistaken in his belief, this fact does not mean that the belief itself was pretext.  See Randle v. City of Aurora, 69 F.3d at 455.  The Court does not exist to act as a super personnel department that punishes supervisors for making innocent mistakes.  Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs., 165 F.3d at 1329; Jones v. Barnhart, 349 F.3d at 1267.  Griego may or may not have been correct that being a pilot was needed for the position, but Trujillo has not presented evidence that raises a genuine issue of material fact regarding Griego's understanding that the SASI had to be a pilot or a navigator and possess an FAA certification.

### 2.     Trujillo Has Presented Evidence that the Defendant's Second Non-Discriminatory Reason is Pretext.

As their second legitimate, nondiscriminatory reason, the Defendants assert that Trujillo was not hired because Crook did not provide her name to Griego as one of the persons to interview for the position.  See Defendants' Motion for Summary Judgment at 9.  In his affidavit, Griego stated:

> As a principal, I rely on the Air Force to screen and identify qualified individuals for the JROTC instructor positions.  Col. Crook and I worked with the Air Force JROTC headquarters at Maxwell AFB in Alabama to identify qualified individuals with an interest in the SASI position at Valley High School.  Shortly after Col. Crook and I began the process of working with the Air Force to identify qualified individuals, Col. Crook advised me that he had the names of two individuals for me to interview for the position.  Lourdes Trujillo was not one of the names provided to me.

See Griego Aff. ¶ 7, at 2.

-19-

Trujillo disputes this second reason by citing a transcript of a tape-recorded conversation between Trujillo and Crook, in which Crook states that his involvement in Mayerstein's hiring involved only putting in a good word for Mayerstein when Griego asked for Crook's opinion.[4]  See Pro Se Plaintiff's Response to Defendant's Motion for Summary Judgment at 4.  During that conversation, in response to Trujillo's statement that Griego and Crook knew Trujillo was interested in the SASI position, Crook stated: "The only -- the only input I had is just the principal called me and said, what did I think of this guy.  I said, 'I have no problem with him.'"  Transcript of Conversation Between Crook and Trujillo 3:4-5.  Trujillo also points to statements Crook made  in the tape-recorded conversation in which he agreed with Trujillo that the hiring happened through the "Good Old Boy Network" instead of through the systematic process that the Defendants suggest.

---

[4] The Defendants argue that Crook's statements are inadmissible hearsay.  See Reply at 4. Rule 801(d)(2) of the Federal Rules of Evidence provides that a statement is not hearsay if "[t]he statement is offered against a party and is . . . a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship. . . ."  Fed. R. Evid. 801(d)(2)(D).  In his affidavit, Griego indicates that Crook's duties included assisting Griego in hiring a new SASI by identifying potential applicants.  See Griego Aff. ¶ 7, at 2. As Griego's assistant in this matter, Crook's statements to Trujillo may be statements by Griego's agent.  Their relationship concerned the hiring of a new SASI, and the statements concern the hiring of a new SASI.  See id.; Transcript of Conversation Between Crook and Trujillo.  Moreover, Crook may have been an employee of APS at the time.  The parties do not indicate when Crook made the statements.  While the proponent of the evidence has the burden of establishing its admissibility,  see Allan v. Springville City, 388 F.3d 1331, 1335 (10th Cir. 2004)(citing Phillips v. Hillcrest Med. Ctr., 244 F.3d 790, 802 (10th Cir. 2001)), the Court must construe all evidence in favor of the non-moving party.  The recording indicates that the conversation occurred before Mayerstein assumed the SASI position in October 2001.  See Transcript of Conversation Between Crook and Trujillo at 2:8-11 (referring to Mayerstein's assumption of the SASI position as an event that will occur at some time in the future).  Crook stated that he would not retire until October 2001.  See Griego Aff. ¶ 5, at 2. Because the conversation took place before Crook's retirement in October 2001, and taking all evidence in the light most favorable to the non-moving party, Crook was Griego's agent and an APS employee when he made these comments.  Crook's statements may thus qualify as statements "by a party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship," and would thus be admissible.

See Pro Se Plaintiff's Response to Defendant's Motion for Summary Judgment at 3; Transcript of Conversation Between Crook and Trujillo at 12:1-3.

Trujillo also asserts that Griego, instead of opening up the hiring process to competition, kept the process closed by not advertising the position and telling Mayerstein not to talk about the vacancy. See Pro Se Plaintiff's Response to Defendant's Motion for Summary Judgment at 2; Mayerstein Aff. ¶ 1, at 1. Trujillo also cites to a letter from Geraldine Herrera, EEOC Federal Investigator, to Barbara Lynn, APS Director, in which Herrera states: "Principal Griego in his statement to Investigator Good stated Charging Party was not selected as she was not on 'list of applicants.' The evidence shows there was no 'list of applicants,' and the school made a 'by name' request which means they requested Mr. Mayerstein." Letter from Geraldine Herrera, EEOC Federal Investigator, to Barbara Lynn, APS Director at 2 (dated June 10, 2002).

Crook's statement -- that the only input he had in the process was to give Griego his impression of Mayerstein -- contradicts the Defendants' assertions that the process was driven by a list that Crook prepared and gave Griego, which allegedly did not contain Trujillo's name. His other statement about the "Good Old Boy Network," although ambiguous, suggests that the hiring process was not the formal process Griego describes. Moreover, the EEOC investigator's conclusions further call into question the Defendants' assertions. Trujillo has thus shown "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." Morgan v. Hilti, Inc., 108 F.3d at 1323 (internal quotations omitted)(citations omitted). Trujillo has established a genuine issue of material fact whether the Defendants' second non-discriminatory reason

is pretext.

### 3.    Trujillo Has Not Presented Evidence that the Defendant's Third Non-Discriminatory Reason is Pretext.

The Defendants' third nondiscriminatory reason is that Trujillo could not have held the position because it would have required her to supervise her husband, which is prohibited by APS and Air Force Policy.  See Defendants' Motion for Summary Judgment at 9-10.  Trujillo has not established a genuine issue that this reason is pretext.  She argues that APS could have hired her because her husband would have resigned if she was hired.  See Pro Se Plaintiff's Response to Defendant's Motion for Summary Judgment at 5.  She has not presented evidence, however, that Griego knew her husband would resign and used this ground as a mere pretext to not hire her. Trujillo thus fails to demonstrate a genuine issue that this non-discriminatory reason is pretext.

## II.    THE COURT SHOULD NOT GRANT THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BECAUSE OF THE GENUINE ISSUE THAT EXISTS ON THE SECOND NONDISCRIMINATORY REASON.

The Court has determined that a genuine issue exists as to only one, but not all, of the Defendants' three nondiscriminatory reasons for not hiring Trujillo.  The Court must decide whether the lack of a genuine issue on the other two reasons is enough to grant the Defendants' Motion for Summary Judgment.

To survive summary judgment, a plaintiff must normally show that each of the Defendants' proffered reasons for not hiring her are pretextual.  See Tyler v. RE/MAX Mountain States, Inc., 232 F.3d at 814 (citation omitted).  If the Court mechanically applied this rule, then Trujillo's failure to illuminate a genuine issue on two of the Defendants' three grounds would mean victory for the Defendants.

The Tenth Circuit, however, has explained that a court should not decide summary judgment

motions in employment discrimination cases in such a formulaic manner.  It rejected the idea that a district court should grant summary judgment against a plaintiff when "the plaintiff casts substantial doubt on many of the employer's multiple reasons" such that "the jury could reasonably find the employer lacks credibility."  Id. (citation omitted).  Put another way, "there may be cases in which the multiple grounds offered by the defendant . . . are so intertwined, or the pretextual character of one of them so fishy and suspicious, that the plaintiff may [prevail]."  Id. (internal quotations omitted)(alteration in original)(citation omitted).

The Court concludes that the genuine issue on the second reason casts enough doubt on the other two reasons that a jury might still find in Trujillo's favor.  The second reason attempts to paint a picture portraying Griego as passively responding to Crook's list of names: Griego relied on Crook to provide him with a list of names of people qualified for the SASI position and confined his search for a new SASI to those persons.  Rather than acting to shape the selection process according to any personal and unlawful agenda, Griego allowed Crook to define the parameters of the process and merely reacted to what Crook had done.  Because it was Crook who kept Trujillo's name off of the list, Griego can hardly be accused of refusing to hire her on the basis of her national origin or gender.

Trujillo has presented evidence directly rebutting the Defendants' contention that the process began with a list developed by Crook, thereby splashing a coat of doubt over the scene sketched by the Defendants.  Crook admits, in the taped conversation with Trujillo, that the only input he made in the process was to give his opinion of Mayerstein in response to Griego's query.  Without the list, and the chain of events it purportedly initiated and guided, Griego appears more directly involved than before in the decision to exclude Trujillo from consideration.  His comment thus strikes at the heart of the Defendants' carefully drawn portrait.

-23-

While the other two nondiscriminatory reasons appear at first to be entirely separate from this reason, all three reasons are in fact interconnected.  As a result of this inconsistency, a jury could reasonably begin to question the Defendants' credibility on the other two nondiscriminatory reasons. The Defendants have repeatedly emphasized that Crook commenced the process by submitting to Griego a list of applicants.  If a jury questions the Defendants' sincerity on this central point, then it may also question the Defendants' assertions in these two other areas.  If a jury does not believe the Defendants about the list, why should they still believe that the Defendants did not know that Trujillo was correct that the alleged requirements for the position did not apply to her?  Why should they take at face value that the Defendants did not know that Trujillo's husband would resign if Griego hired his wife?

The jury could reasonably begin to see the case quite differently if they accept Trujillo's argument about the list.  A jury could conclude that Griego took a more active part in selecting Mayerstein from the pool of qualified applicants than the Defendants contend, and consequently that Griego deliberately refused to hire her.  The requirement of being FAA certified and a pilot or navigator might then appear less like an immovable object placed in Trujillo's path by forces outside of the Defendants' control, and more like an obstacle purposefully unleashed upon Trujillo to prevent her from being hired, especially in light of Mayerstein's non-certification and Trujillo's purported waiver.  The Defendants' lack of knowledge of Transito Trujillo's willingness to resign might also seem to be a result of willful ignorance, or even a lie.

Suspicious about the Defendants' second nondiscriminatory reason, a jury could reasonably dismiss the Defendants' other grounds as a smokescreen to hide the true, unlawful discrimination perpetrated by the Defendants against Trujillo.  A jury would be within its rights to allow its doubt

-24-

about the Defendants to spread like a cancer from one nondiscriminatory reason to another, infecting all of them.

With this possible outcome in mind, the Court will not grant summary judgment against Trujillo because she has demonstrated a genuine issue on only one of the three nondiscriminatory reasons. The genuine issue she has created is enough of a basis for a jury to doubt the Defendants' credibility in other areas of vital, even dispositive, importance to this suit. Looking at the context of the entire suit, this genuine issue effectively thwarts summary judgment for the Defendants.

To allow Trujillo to go forward in this matter, having failed to show a genuine issue on two of the Defendants' three nondiscriminatory reasons, may at first blush seem unfair to the Defendants and irrational. Yet this outcome merely recognizes the reality that "an employer's strategy of simply tossing out a number of reasons to support its employment action in the hope that one of them will 'stick' could easily backfire," leading a jury to believe that the entire endeavor is so flawed as to be intentionally discriminatory. Smith v. Chrysler Corp., 155 F.3d 799, 809 (6th Cir. 1998). The Court will therefore deny the Defendants' Motion for Summary Judgment.

## III.   THE COURT DENIES TRUJILLO'S MOTION FOR SUMMARY JUDGMENT BECAUSE OF THE GENUINE ISSUE THAT EXISTS BETWEEN THE PARTIES.

As a threshold matter, the Court notes that Trujillo's motion lacks virtually any factual analysis. While she lays out a series of allegedly undisputed facts, Trujillo fails to explain how they satisfy Title VII's and § 1981's requirements for an employment discrimination cause of action. See generally Plaintiff's Motion for Summary Judgment and Memorandum Brief at 16-19. Instead, she merely states that the listed facts make it "clear" that the Defendants violated the law without intimating in the slightest how that is so. Id. at 16.

Although the Court must construe a pro se litigant's pleadings liberally, see Hall v. Bellmon,

935 F.2d 1106, 1110 (10th Cir. 1991)("A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." (citations omitted)), the Court must not cross the line separating liberal construction from advocacy on the litigant's behalf. See Drake v. Ft. Collins, 927 F.2d 1156, 1159 (10th Cir. )("Despite the liberal construction afforded pro se pleadings, the court will not construct arguments or theories for the plaintiff in the absence of any discussion of those issues." (citations omitted)).  Because Trujillo makes no argument on behalf of her motion, the Court is reluctant to consider it much further.

In any event, the Court's ruling on the Defendants' motion illuminates the proper road for the Court to take in this matter.  By recognizing already a genuine issue of material fact in this case, the Court should deny Trujillo's motion on that basis.  The Court cannot in one breath announce that a genuine issue of material fact exists with regard to the Defendants' motion and, in the next breath, hold that no genuine issue of material fact exists with regard to Trujillo's motion.  The Court will thus deny Trujillo's motion as well.

**IT IS ORDERED** that the Defendant's Motion for Summary Judgment, filed  February 18, 2004, and Plaintiff's Motion for Summary Judgment and Memorandum Brief are denied.

_____

UNITED STATES DISTRICT JUDGE

Lourdes E. Trujillo
Snellville, Georgia

*Pro se Plaintiff*

Max J. Madrid
Alex C. Walker
Modrall, Sperling, Roehl, Harris & Sisk, P.A.
Albuquerque, New Mexico

*Attorneys for the Defendants*