## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

LOURDES E. TRUJILLO,

      Plaintiff,

vs.                                    No.  CIV 02-1509 JB/RLP

BOARD OF EDUCATION OF THE
ALBUQUERQUE PUBLIC SCHOOLS,
and ANTHONY GRIEGO, Individually and
in his Official Capacity as Principal of Valley
High School, Albuquerque Public Schools,

      Defendants.

## MEMORANDUM OPINION

**THIS MATTER** comes before the Court on the Defendants' Motion to Dismiss Counts II

and III of the Plaintiff's Complaint, filed Aug. 28, 2003 (Doc. 19).  The primary issue is whether

Plaintiff Lourdes Trujillo has stated a racial discrimination claim, as opposed to a national origin

discrimination claim, under 42 U.S.C. § 1981.  The Court has denied the Defendants' motion to

dismiss to the extent that Trujillo has stated a racial discrimination claim.  Because 42 U.S.C. § 1981

does not redress national origin or gender discrimination, the Court has granted the Defendants'

motion to dismiss Trujillo's national origin and gender discrimination claims.

The Court entered an order granting the motion in part and denying it in part on March 31,

2006 (Doc. 96).  In footnote 1 of that Order, the Court promised to issue a memorandum opinion

explaining the reason for its decision.

## FACTUAL BACKGROUND

Trujillo alleges that she applied for a position as a Senior Aerospace Science Instructor at

Valley High School in Albuquerque, New Mexico in 2001.  See Compl. ¶ 10, at 4, filed Dec. 2, 2002

(Doc. 1).  Trujillo represents that, despite her impressive qualifications, Defendant Anthony Griego rejected Trujillo's application in favor of a "less-qualified  non-Hispanic male."  Id. ¶¶ 13-18, at 4-5.  Trujillo asserts that Griego used the pretext that Lt. Col. Mark Mayerstein, the successful applicant, had Federal Aviation Administration (FAA) certification to teach a certain flight course, when, in fact, Mayerstein lacked FAA certification.  See id. ¶¶ 21, 23, at 6.  Further, Trujillo contends that Defendant Albuquerque Public School administrators knew of this discriminatory scheme and approved it.  See id. ¶ 22, at 6.

## PROCEDURAL BACKGROUND

Trujillo filed a formal charge of discrimination with the EEOC.  See Compl. ¶¶ 5-6, at 3; "EEOC Letter of Determination" (filed Dec. 30, 2003) (attached to Pl. Resp. to MSJ (Doc. 38) as Ex. 7, at 1 (finding probable cause to support Title VII "allegation of non selection of [Trujillo] . . . because of her National Origin, Puerto Rican and her gender")).  Trujillo subsequently filed a Complaint alleging "invidious discrimination on the bases of her national origin and gender," Compl. at 1, and stating that Trujillo is protected "by virtue of her national origin (Puerto Rico), gender, female, and EEOC protected activities."  Id. ¶ 4, at 3.

In Count I, titled "Gender and National Origin Discrimination in Violation of Title VII, United States Code," Trujillo alleges that her application was rejected in favor of a "less-qualified *non-Hispanic* male."  Id. ¶ 13, at 4 (emphasis added).  Importantly, Trujillo also alleges "discrimination by virtue of Plaintiff's national origin, *Hispanic* (Puerto Rican) and sex, female. . . ."  Id. ¶ 28, at 7 (emphasis added).

Count II, titled "Section 1981 Discrimination (Gender and National Origin)," incorporates Count I:  "The foregoing paragraphs are herein incorporated as if fully set forth."  Compl. ¶ 30, at

7.  Further, Count II alleges: "In their above-described acts and omissions, Defendant Albuquerque Public Schools and Defendant Anthony Griego discriminated against Plaintiff Trujillo because of her national origin, Puerto Rican, and sex, female." Id. ¶ 31, at 7-8.

Count III of Trujillo's Complaint seeks punitive damages against Griego in his individual capacity. See id. ¶ 35, at 8.  Because Trujillo's only claims against Griego in his individual capacity are for discrimination under 42 U.S.C. § 1981, Count III is derivative of Count II.

The Defendants now move under rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss Counts II and III of Trujillo's Complaint.  The Defendants argue that § 1981 does not redress discrimination on the basis of national origin or sex, so Count II must be dismissed.  See Def. Mot. To Dismiss at 1.  Further, the Defendants contend that, because Count III stems solely from Count II, Count III should also be dismissed.  See id.

## LAW REGARDING CLAIMS UNDER 42 U.S.C. § 1981

42 U.S.C. § 1981 prohibits racial discrimination in the making and enforcement of private contracts:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, to be parties, give evidence, and to the full and equal benefits of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

Section 1981 derives from § 1 of the 1866 Civil Rights Act and from § 16 and § 18 of the 1870 Voting Rights Act.  See Runyon v. McCrary, 427 U.S. 160, 169 n. 8 (1976), overruled on other grounds, Patterson v. Mclean Credit Union, 491 U.S. 164 (1989); Bhandari v. First Nat'l Bank of Commerce, 829 F.2d 1343, 1345-48 n. 4-9 (5th Cir. 1987), vacated and remanded on other grounds,

Bhandari v. First Nat'l Bank of Commerce, 887 F.2d 609 (1989).  Because § 1981 and 42 U.S.C. § 1982 derive from the same legislation but were recodified as distinct sections, courts have construed the scope of both sections identically.  See Runyon v. McCrary, 427 U.S. at 170 (citing Tillman v. Wheaton-Haven Recreation Ass'n, 410 U.S. 431, 439 (1973)("The operative language of both § 1981 and § 1982 is traceable to the Act of April 9, 1866 . . . . In light of the historical interrelationship between § 1981 and § 1982, we see no reason to construe these sections differently . . . .")) (internal citations and punctuation omitted).

The Supreme Court of the United States has explained that § 1982 "deals only with racial discrimination and does not address itself to discrimination on grounds of religion or national origin." Jones v. Alfred H. Meyer Co., 392 U.S. 409, 413 (1968).  The Court later applied Jones v. Alfred H. Meyer Co. to § 1981 claims in Johnson v. Railway Express Agency, Inc., 421 U.S. 454 (1975), holding that "§ 1981 affords a federal remedy against discrimination in private employment on the basis of *race*."  421 U.S. at 459-60 (emphasis added).  Soon thereafter, in Runyon v. McCrary, the Supreme Court reiterated its conclusion, finding that § 1981 "prohibits *racial discrimination* in the making and enforcement of private contracts."  427 U.S. at 168 (emphasis added).  Thus, by 1976 it was "well established" that § 1981 "prohibits racial discrimination," but does not prohibit national origin or gender discrimination.  Id.

Applying the foregoing precedent, the Tenth Circuit adopted a broad definition of race that includes ethnicity, while still recognizing that national origin alone is insufficient to support a § 1981 claim.  See Manzanares v. Safeway Stores, Inc., 593 F.2d 968, 969-71 (10th Cir. 1979).  In Manzanares v. Safeway Stores, Inc., a plaintiff of Mexican-American descent alleged § 1981 discrimination "because of his race and/or national origin."  Id. at 969.  The Tenth Circuit stated that

§ 1981 "is directed to racial discrimination primarily, but is not necessarily limited to the technical or restrictive meaning of 'race,'" while also recognizing that "[a] number of cases have held that 'national origin' is not enough." Id. at 971 (internal citations omitted). The Tenth Circuit concluded that the "term 'race' in our language has evolved to encompass some non-racial but ethnic groups," including Mexican Americans, and that the "[Tenth] Circuit has recognized Spanish speaking or Spanish-surnamed Americans . . . for purposes of section[] 1981 . . . ." Id. at 970 (internal citation omitted). The Tenth Circuit thus determined that a person of Mexican-American descent falls within an ethnic group protected by § 1981's prohibition against racial discrimination.

Between 1976 and 1987, the courts were split on whether to construe race broadly under § 1981 to allow claims in which ethnicity and ancestry were intertwined with national origin. Resolving that split, in 1987 a unanimous Supreme Court of the United States adopted a broad definition of race while continuing to exclude § 1981 claims based solely on national origin. The Court squarely held that racial discrimination under § 1981 includes discrimination based on one's "ancestry or ethnic characteristics," after noting that § 1981 "did not cover" discrimination on the basis of national origin and religion. Saint Francis College v. Al-Khazraji, 481 U.S. 604, 613 (1987).

The Supreme Court explained that the first issue under § 1981 is whether a *racial* discrimination claim has been alleged, and noted that the district court had interpreted the Iraqi-born plaintiff's complaint as alleging "discrimination based on national origin, religion, *and/or race*." Id. at 606 (emphasis added). The Supreme Court concluded that § 1981's racial discrimination requirement would be satisfied "if respondent on remand can prove that he was subjected to intentional discrimination based on the fact that he was born an Arab, rather than solely on the place or nation of his origin, or his religion . . . ." Id. at 613.

Once racial discrimination has been alleged, the second issue is whether the plaintiff falls within a racial or ethnic group Congress intended to protect when it enacted § 1981.  The Supreme Court of the United States reasoned that, although "a variety of ethnic groups, including Arabs, are now considered to be within the Caucasian race," conceptions of race were plainly different during the mid-19th century, "at the time § 1981 became law."  Id. at 610.  Looking to dictionaries from the middle years of the 19th century, the Court found that Arabs, Hebrews (or Hebrews of the Semitic race), Jews, Blacks, Gypsies, Basques, and Chinese, were all popularly considered distinct races, as were Englishmen, Anglo-Saxons, Germans, Scandinavians, Swedes, Norwegians, Finns, Greeks, Latins, Italians, Spanish, Mexicans, Hungarians, Russians, and Mongolians.  See id. at 610-13.  The Court affirmed a broad, rather than a restrictive or technical, meaning of race, and held that § 1981 was "intended to protect from discrimination identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics."  Id. at 613.  Accordingly, where a plaintiff can show discrimination based on race, including ethnicity or ancestry, a § 1981 cause of action will lie.  See id.  But where a plaintiff can show only discrimination based on national origin, a § 1981 cause of action will not lie.  See id.

The same day the Supreme Court issued Saint Francis College v. Al-Khazraji, it also issued its unanimous opinion in Shaare Tefila Congregation v. Cobb, 481 U.S. 615 (1987).  The Supreme Court held that "a charge of racial discrimination within the meaning of § 1982 cannot be made out by alleging only that the defendants were motivated by racial animus; it is necessary as well to allege that defendants' animus was directed towards the kind of group that Congress intended to protect when it passed the statute."  Id. at 617.

Based on the Supreme Court's holding in Saint Francis College v. Al-Khazraji, the Tenth

Circuit considers a claim of discrimination "based on Mexican-American ancestry" to fall "within § 1981's protection against racial discrimination," but concludes that § 1981 "does not protect individuals from discrimination based on national origin."  Aramburu v. The Boeing Co., 112 F.3d 1398, 1411 n. 10 (10th Cir. 1997).

## STANDARD FOR DETERMINING A RULE 12(b)(6) MOTION

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides:

> (b) HOW PRESENTED.  Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion:  . . . (6) failure to state a claim upon which relief can be granted.

"[T]he Federal Rules of Civil Procedure erect a powerful presumption against rejecting pleadings for failure to state a claim."  Maez  v. Mountain States Tel. & Tel., Inc., 54 F.3d 1488, 1496 (10th Cir. 1995) (internal citations omitted).  Where it appears beyond doubt that the plaintiff cannot prove any set of facts that would entitle him to relief, the court may dismiss a cause of action under rule 12(b)(6) for failure to state a claim.  See Jojola v. Chavez, 55 F.3d 488, 490 (10th Cir. 1995).  In determining the sufficiency of a complaint on a 12(b)(6) motion, the issue is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence to support his claim.  See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).  In deciding such motions, the court should dismiss a complaint where, assuming as true all well-pleaded facts and drawing all reasonable inferences in the plaintiff's favor, the plaintiff has failed to state a claim for which relief may be granted.  See Housing Auth. v. City of Ponca City, 952 F.2d 1183, 1187 (10th Cir. 1991).

## ANALYSIS

To the extent that Counts II and III of Trujillo's complaint seek relief under § 1981 for

national origin and gender discrimination, the Court grants the motion to dismiss.  To the extent that Trujillo's Complaint states a racial discrimination claim in Counts II and III, the Court denies the motion to dismiss.

## I.   TRUJILLO HAS STATED A CLAIM UNDER 42 U.S.C. § 1981 FOR RACIAL DISCRIMINATION.

Assuming all well-pleaded facts as true and drawing all reasonable inferences in Trujillo's favor, Trujillo has stated a claim for racial discrimination under § 1981. Her complaint sets forth allegations of racial discrimination against her as an Hispanic, rather than solely national-origin discrimination.

### A.   TRUJILLO'S COMPLAINT ALLEGES RACIAL DISCRIMINATION.

The Defendants argue that Trujillo alleges only national-origin and sex discrimination, and fails to allege racial discrimination.  See Def. Reply at 1.  The Defendants point out that Trujillo does not allege that she is a member of a "protected class" because of her *race*, as opposed to her national origin.  Id.

Trujillo contends that she intended to "assert race as grounds for her § 1981 claims."  Pl. Resp. at 5.  She explains that she used the words "Hispanic (Puerto Rican)," and alleged that her job application was rejected "in favor of a less-qualified non-Hispanic male," to indicate the racial nature of the alleged discrimination.  Id.  Trujillo asserts that she incorporated these words, and their allegation of racial discrimination, into Counts II and III through paragraphs 30 and 34, respectively, which incorporate all previous paragraphs of the Complaint.  See id. at 5-6.  Additionally, Trujillo argues that her claim is that "she was discriminated against because of her Puerto Rican heritage," and that § 1981 proscribes such discrimination based on "ancestry and ethnic characteristics."  Id. at

4 (quoting St. Francis College v. Al-Khazraji, 481 U.S. at 613).

The Court concludes that Trujillo has sufficiently stated a claim for racial discrimination. The language in Count I, which should be used to inform the language in the other counts, references unlawful treatment because of her ethnicity as an Hispanic. It is reasonable to infer that Trujillo based her § 1981 and punitive damages claims on this alleged act of racial discrimination, just as she did for her Count I claim. The Court finds that her allegations fit within § 1981's broad definition of race that proscribes discrimination based on ethnicity or ancestry.

## B.   TRUJILLO, AS AN HISPANIC, IS A MEMBER OF AN ETHNIC GROUP THAT CONGRESS INTENDED TO PROTECT WHEN IT ENACTED § 1981.

The Court must next determine whether Trujillo, as an Hispanic of Puerto Rican descent, belongs to a group that Congress intended to protect when it enacted § 1981. See Shaare Tefila Congregation v. Cobb, 481 U.S. at 617. Trujillo contends that, because Puerto Ricans share characteristics associated with "both white or Caucasian and black or African ancestry, as well as Hispanic or Spanish ancestry," they are sufficiently ethnically distinct to invoke § 1981 protection. Pl. Resp. at 4-5 (internal quotations omitted). In Saint Francis College v. Al-Khazraji the Supreme Court of the United States found that Spanish, Mexicans, and blacks were among the ethnic groups protected for purposes of § 1981. See 481 U.S. at 612. Similarly, in Manzanares v. Safeway Stores, Inc., the Tenth Circuit concluded that the "term 'race' in our language has evolved to encompass some non-racial but ethnic groups," including Mexican Americans, and that the "[Tenth] Circuit has recognized Spanish speaking or Spanish-surnamed Americans . . . for purposes of section[] 1981." Id. at 970 (internal citation omitted). The United States Court of Appeals for the Second Circuit has concluded that "[t]here can be no question that [§ 1981's protection] includes persons like plaintiff

who are of Puerto Rican descent." <u>Lopez v. S.B. Thomas, Inc.</u>, 831 F.2d 1184, 1188 (2d Cir. 1987).

The Court finds that Trujillo's Hispanic ethnicity and Puerto Rican ancestry, which is a combination of several different groups that courts have recognized are protected under § 1981, qualify her for § 1981 protection.  Accordingly, the Court will deny the Defendants' motion to dismiss Count II to the extent that Trujillo advances a claim of racial discrimination based on her Hispanic ethnicity and Puerto Rican ancestry.

## II.   TRUJILLO HAS NO CLAIM UNDER 42 U.S.C. § 1981 FOR NATIONAL <u>ORIGIN DISCRIMINATION OR SEX DISCRIMINATION.</u>

But, taking Trujillo's allegations as true, she does not make out a valid national origin or sex discrimination claim under § 1981.  Section 1981 does not redress these forms of discrimination.

### A.   TRUJILLO HAS NO CLAIM UNDER 42 U.S.C. § 1981 FOR NATIONAL ORIGIN DISCRIMINATION.

As discussed *supra*, § 1981 does not address discrimination based solely on national origin. While Trujillo's claim of national origin discrimination is recognized and may be available under Title VII – Count I of her complaint – it is not available under § 1981.  Accordingly, the Court dismisses the portion of Count II that seeks § 1981 redress for national origin discrimination.

### B.   TRUJILLO HAS NO CLAIM UNDER 42 U.S.C. § 1981 FOR SEX DISCRIMINATION.

Likewise, while Trujillo's claim for sex discrimination is recognized under Title VII, sex discrimination is not cognizable under § 1981.  <u>See</u>, <u>e.g.</u>, <u>Runyon v. McCrary</u>, 427 U.S. at 167 (stating that § 1981 does not pertain to sex discrimination); <u>Manzanares v. Safeway Stores, Inc.</u>, 593 F.2d at 971 ("Section 1981 does not apply to sex or religious discrimination.").

In addition, in her brief Trujillo "voluntarily relinquishes any claim of sex discrimination

brought under 42 U.S.C. § 1981," explaining that her allegation "was not intentional, but was occasioned by an oversight." Pl. Resp. at 7.  Given the case law precluding suit under § 1981 for sex discrimination, and Trujillo's acknowledgment of the controlling precedent, the Court will dismiss Trujillo's  § 1981 claim for sex discrimination.

## III.   TRUJILLO HAS A CLAIM FOR PUNITIVE DAMAGES AGAINST GRIEGO UNDER 42 U.S.C. § 1981.

In Count III, Trujillo seeks punitive damages against Griego stemming from her § 1981 claim against Griego in Count II.  As the Court has indicated above, § 1981 does not provide a remedy for national origin discrimination or sex discrimination.  But because § 1981 does provide a remedy for racial discrimination, and Trujillo's complaint states a cause of action for racial discrimination under § 1981, Trujillo retains the possibility of recovering punitive damages from Griego under § 1981 for racial discrimination.

Accordingly, the Court grants in part the Defendants' motion to dismiss Count III insofar as it relates to Trujillo's claims of national origin and sex discrimination. The Court denies in part the Defendants' motion to dismiss Count III of Trujillo's complaint insofar as it relates to her claim for punitive damages arising from racial discrimination under § 1981.

**IT IS ORDERED** that the Defendants' Motion to Dismiss Counts II and III of Trujillo's Complaint is granted in part and denied in part.  Trujillo's claims in Counts II and III are dismissed with prejudice to the extent they seek to bring national origin and gender discrimination claims under § 1981.

UNITED STATES DISTRICT JUDGE

*Counsel:*

Lourdes E. Trujillo
Snellville, Georgia

    *Pro Se Plaintiff*

Max J. Madrid
Alex C. Walker
Modrall, Sperling, Roehl, Harris & Sisk, P.A.
Albuquerque, New Mexico

    *Attorneys for the Defendants*