**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

LOURDES E. TRUJILLO,

        Plaintiff,

vs.                                                    CIV No. 02-1509 JP/RLP

BOARD OF EDUCATION OF THE
ALBUQUERQUE PUBLIC SCHOOLS,
and ANTHONY GRIEGO, individually
and in his official capacity, as Principal
of Valley High School, Albuquerque
Public Schools,

        Defendants.

                                                  consolidated with

LOURDES E. TRUJILLO,

        Plaintiff,

vs.                                                       CIV No. 04-646 JP/RLP

BOARD OF EDUCATION OF THE
ALBUQUERQUE PUBLIC SCHOOLS,
and ANTHONY GRIEGO, individually
and in his official capacity, as Principal
of Valley High School, Albuquerque
Public Schools,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

On November 17, 2006 Defendants Anthony Griego and the Albuquerque Public Schools

("APS") filed a Motion for Summary Judgment (Doc. No. 155).[1]  After much procedural activity,

---

[1]  The summary judgment motion relates to the Complaint in CV 04-646, which was consolidated with CV 02-1509 by an Order entered on August 2, 2004 (Doc. No. 84).  All pleadings filed in both cases have been docketed in the earlier-filed case, CV 02-1509, which case resulted in final judgment for Defendants.  *See* footnote 3, *infra.*

(*see* background described in the Order filed August 7, 2007 (Doc. No. 178)), Plaintiff Lourdes E. Trujillo filed her "Pro Se Plaintiff's Response to Defendants Motion For Qualified Immunity and Summary Judgment" on September 10, 2007 (Doc. No. 179). Defendants filed their Reply on September 21, 2007 (Doc. No. 180). Having considered the briefs, the admissible evidence in the record, and the relevant caselaw, the Court concludes that Defendants' motion for summary judgment should be granted.

## I.  BACKGROUND.

Plaintiff brings this case under Title VII, 42 U.S.C. §§ 1981 and 1983, and the New Mexico Human Rights Act, N.M. Stat. Ann. §§ 28-1-1, *et seq.*, alleging she was a victim of national origin discrimination and gender discrimination in employment.[2] She also alleges Defendants retaliated against her after she filed charges of discrimination. Plaintiff's claims stem from the failure of Defendants to hire her for two vacancies in the position of Senior Aerospace Science Instructor ("SASI") in the Air Force Junior ROTC ("AFJROTC") Department at Valley High School in Albuquerque, New Mexico; one failure to hire occurred in the fall of 2002 and the other in the summer of 2003.

Defendants deny any unlawful discrimination or retaliation, and assert that Plaintiff was not selected for the positions because the Air Force did not nominate her in accordance with the competitive selection procedure adopted by Valley High School. Defendants maintain that Plaintiff did not qualify for nomination by the Air Force because she failed to comply with an Air Force regulation that required her to resign her existing SASI position before applying for the

---

[2] Plaintiff alleges Title VII violations, but she exhausted her EEOC remedies only with respect to not being hired for the first vacancy in 2002, not the second one in 2003. Pl. Compl. ¶¶ 1, 2, 5, 6, 8, 10. This has no effect on the summary judgment analysis.

SASI vacancies at Valley.  Defendant Griego asserts the defense of qualified immunity as to all claims against him in his individual capacity.

Plaintiff counters that Defendants' asserted reason for not selecting her is a pretext either for unlawful discrimination or for retaliation.  She contends that Defendants unevenly applied the Air Force regulation requiring that a current SASI instructor resign before applying for another SASI position.  She also argues that under both APS and Air Force policies, Defendants could have hired her directly without going through the Air Force competitive selection process.

## II.  SUMMARY JUDGMENT STANDARDS.

Summary judgment is appropriate only if there is no genuine issue as to any material fact and  the moving party is entitled to a judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c).  A fact is "material" if, under the governing law, it could have an effect on the outcome of the lawsuit.  *See* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute about a material fact is "genuine" where the evidence is such that a reasonable factfinder could return a verdict for the nonmoving party.  Ingels v. Thiokol Corp., 42 F.3d 616, 620 (10th Cir. 1994), *quoting* Anderson v. Liberty Lobby, Inc., 477 U.S. at 248.

When applying this standard, the Court examines the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment.  Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990).  The moving party bears the initial burden of showing the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986); Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Serv., 165 F.3d 1321, 1326 (10th Cir. 1999).  Only then does the burden shift to the non-movant to come forward with evidence showing that there is a genuine

issue of material fact.  Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir.

1991).  The non-moving party may not avoid summary judgment by resting upon the mere

allegations or denials of the party's pleadings.  Bacchus, 939 F.2d at 891.  To withstand a motion

for summary judgment, the non-movant must make specific reference to admissible evidence in

the record.  See Gross v. Burggraf Constr. Co., 53 F.3d 1531, 1546 (10th Cir. 1995).  A *pro se*

party's verified complaint may be treated as an affidavit to the extent the allegations are detailed,

not just conclusory.  Hall v. Bellmon, 935 F.2d 1106, 1111 (10th Cir. 1991).

### III.  QUALIFIED IMMUNITY STANDARDS.

Qualified immunity protects government officials performing discretionary functions from

liability for civil damages "insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457

U.S. 800, 818 (1982); Eaton v. Meneley, 379 F.3d 949, 954 (10th Cir. 2004); Tonkovich v.

Kansas Bd. of Regents, 159 F.3d 504, 516 (10th Cri. 1998).  The Tenth Circuit utilizes a two-part

test for evaluating claims of qualified immunity:

> [T]he plaintiff must show (1) that the defendant's conduct violated
> a constitutional or statutory right, and (2) that the law governing
> the conduct was clearly established at the time of the alleged
> violation.  . . .  For a right to be clearly established, '[t]he contours
> of the right must be sufficiently clear that a reasonable official
> would understand that what he is doing violates that right.'
> Anderson v. Creighton, 483 U.S. 635, 640 (1987).

Eaton, 379 F.3d at 954 (internal citations omitted).  The court must proceed by determining

whether a plaintiff  has demonstrated the violation of a constitutional or statutory right.  Id.  If the

plaintiff fails to meet the first part of the test, the court need not go on to the "clearly-established"

prong of the test.  Id.; Hinton v. City of Elwood, 997 F.2d 774, 782 (10th Cir. 1993).

### IV.  UNDISPUTED MATERIAL FACTS.

In accordance with summary judgment standards, the following facts are undisputed or the Court views them in the light most favorable to Plaintiff.

A school is allowed to offer an AFJROTC program only by agreement with the Air Force; the agreement between Valley High School and the Air Force provides that Valley must conform to Air Force directives regarding instructors.  Def. Ex. A, Griego Aff. ¶ 3 at 1; Ex. 1 ¶¶ 2(o)-(r) attached to Griego Aff.  Each school decides whom to hire as SASI in its AFJROTC program, but a school may not hire a SASI who is not certified by the Air Force.  The Air Force sets the curriculum for the AFJROTC program and reimburses the school for one-half of the SASI's pay.

There are two methods for a high school to hire a retired member of the Air Force as an AFJROTC instructor.  First, the school may specifically request ("by name") a certain individual, after which the individual must be approved by the Branch Chief of the Air Force. Def. Undisputed Material Fact ("UMF") 2; Def. Ex. A ¶ 5 at 1-2; Def. Ex. B § B(3) (AFJROTC Operating Instr. SOI 36-2004); Pl. Resp. to Def. UMF 3 (quoting SOI 36-2004 ¶ 8.1).  Under the by-name method, the vacancy is not advertized.  Second, the school may use a competitive selection method under which it notifies the Air Force of the vacancy and the Air Force provides the school with names of qualified candidates to consider.  Def. UMF No. 2.  Under the competitive selection method, after a school notifies the Air Force of a vacancy, the Air Force posts the vacancy on its website.  Def. UMF No. 3.  After a vacancy is posted, interested persons can contact the Air Force and indicate their desire to be considered for the vacancy.  Id.  The Air Force then nominates qualified candidates and provides their names to the school.  Id.  Applicants are told:  "**Do not call these schools unless nominated.**"  Id.; Griego Aff., Def. Ex. A ¶ 6; Ex. 3

5

attached to Griego Aff. (emphasis in original).

Under Air Force regulations relating to the competitive selection method, each December the Air Force provides current AFROTC instructors with letters of intent; based on responses from the instructors, which are due by mid-January, the Air Force forecasts projected vacancies for the following school year.  Def. Ex. B, § 3(15).  Between mid-February and mid-April, instructors may apply for transfer to a vacant position at another school without resigning their current positions, but after April 15, instructors applying for transfer must resign their current positions and provide written notice of resignation through their principal to the Air Force.  Id.

APS hired Mark Mayerstein for a position that opened in 2001 using the by-name method. Def. UMF 1.  Plaintiff filed a discrimination charge with the EEOC over that hiring decision, and filed a complaint in this Court, Lourdes Trujillo v. Bd. of Educ. of Albuquerque Public Schs., et al., CV 02-1509 JP/RLP (D.N.M.), claiming Defendants had excluded her by allowing Mayerstein to "back door" the hiring process.[3]  (Def. UMF 4; Pl. Resp. at 10,11.)  Subsequently, Defendants made a decision that Valley would make no more "by name" requests to fill vacancies in the AFJROTC program.  Def. UMF 5, 6; Griego Aff. ¶ 7 at 2 (Def. Ex. A).  Instead, Defendants would use the "competitive selection"  method, and not consider filling a vacant AFJROTC instructor position at Valley unless the applicant was nominated for the vacancy by the Air Force. Id.

---

[3]  Judge Browning initially denied the Defendants' motion for summary judgment, but that case was ultimately decided against Plaintiff.  See CV 02-1509 Doc. No. 88 (denying Defendants' motion for summary judgment); Doc. No. 98 (granting Defendants' motion for summary judgment); Doc. No. 185 (denying Plaintiff's motion to alter or amend final judgment); Doc. No. 187 (denying Plaintiff's second motion to alter or amend judgment).

After Mayerstein's employment ended in the fall of 2002, Valley's AFJROTC program did not have a SASI, but was assisted by the SASIs from two other Albuquerque high schools.  Def. UMF 7.  In the fall of 2002, Valley notified the Air Force that it wanted to hire someone to fill the SASI position at Valley for the spring 2003 semester, to begin in January 2003.  Id.  In response to Valley's notice, the Air Force nominated three individuals for consideration, including Col. Gary Grant.  Def. UMF 8.  Lourdes Trujillo was not one of the three persons nominated by the Air Force for this vacant position.  Id.

In early November 2002 Plaintiff wrote a letter to principal Griego, APS Board president DeLayo, and APS superintendent Vigil expressing her interest in Valley's SASI position, and indicating that she had made the Air Force aware of her interest and that she knew the Air Force had already provided Valley with a list of nominees.  Def. UMF 9; Griego Aff. ¶ 10 and attached Ex. 5.

Consistent with the Air Force's competitive selection process, Plaintiff was not interviewed for the SASI position at Valley as she had not been nominated by the Air Force.  Def. UMF 10; Griego Aff. ¶ 11; *see also* Ex. 6 to Def. Ex. A (APS's Human Relations ("HR") Director Ronald Williams letter to Plaintiff informing her on February 13, 2003 she was not considered for SASI position at Valley because "Valley High School was sent a list of candidates to interview that were cleared by [the Air Force].  You were not on this list.").  The vacancy was filled by Col. Gary Grant, one of the candidates nominated by the Air Force.  Griego Aff. ¶ 12.

Col. Grant decided not to return for the following school year, so in the summer of 2003 Valley again had a vacancy to be filled.  Griego Aff. ¶ 12.  The Air Force provided APS with the names of several nominees during the summer of 2003.  Id. ¶ 13.  Some of the nominees

withdrew from consideration, and the Air Force made additional nominations, which did not include Plaintiff.  Id.  Col. Jack Martines was one of the nominees.  Def. UMF 12; Griego Aff. ¶ 13; Ex. 7 to Def. Ex. A.  When Plaintiff, in the summer of 2003, sent a letter to Griego and other APS officials expressing her interest in the next SASI vacancy at Valley, Griego responded; he informed Plaintiff in an email on June 14, 2003 that she would "need to contact Air Force headquarters at Maxwell to inform them about your interest in the SASI position here at Valley. Maxwell will forward us names of candidates to interview."  Def. UMF 11; Ex. 8 to Def. Ex. A. Plaintiff had already contacted the Air Force on June 11, 2003 to apply for the vacancy at Valley. Ex. 9 to Def. Ex. A.  Plaintiff was not one of those nominated by the Air Force for the vacancy at Valley in the summer of 2003.  Def. UMF 13; Griego Aff. ¶ 15.  Valley did not interview or consider any persons not nominated by the Air Force for the vacant SASI position in the summer of 2003.  Def. UMF 12.  Valley hired one of the nominees, Col. Jack Martines.  Griego Aff. ¶ 16.

Plaintiff was employed as SASI at a school in Georgia when she sought to transfer to the first SASI vacancy at Valley in November 2002.  Def. UMF 14.  The same was true when Plaintiff sought to transfer to the second SASI vacancy at Valley in June/July 2003.  Id.  Plaintiff did not comply with the Air Force requirement to resign her SASI position in Georgia before applying for the vacant positions at Valley.  Id.

**V.  DISCUSSION.**

**1.  Preliminary Matters.**  There are two preliminary matters:

a.  *Timeliness of Plaintiff's Response.*  On September 24, 2007 Plaintiff filed a "Pro Se Motion . . . of Timely Response" (Doc. No. 181) in which she seeks a ruling that her Response (Doc. No. 179) to Defendants' Motion for Summary Judgment was timely filed.  The

Response was due September 7, 2007.  *See* Order (Doc. No. 178).  It is undisputed that Plaintiff

mailed her Response to the Clerk's office in Albuquerque, New Mexico via UPS next day air mail

on Thursday, September 6, 2007.  Pl. Ex. 1 to Pl. Resp.  The receipt indicates the package was

received for UPS at an Office Depot store in Georgia shortly after 11:00 a.m., with a delivery date

of September 7, 2007.  Id.  Inexplicably, the Clerk's office did not file Plaintiff's Response until

Monday, September 10, 2007.  Under the circumstances, Plaintiff timely filed her Response, and

the Court will grant Plaintiff's motion.

> b. *Plaintiff's Motion to Strike.*  On November 22, 2006 Plaintiff filed a Motion to

Strike Defendants' "Undisputed Material Facts" and Unverified Exhibits (Doc. No. 156).  In it

Plaintiff moves to strike certain of Defendants' Undisputed Material Facts ("UMFs") along with

certain "unverified" exhibits in Defendants' Motion for Summary Judgment.

*UMFs 8, 13, 14.*  In her motion to strike, Plaintiff contends that Defendants' UMFs 8, 13,

and 14 should be stricken insofar as they refer to Air Force documents.  She argues that in her

responses to Defendants' Requests for Admission, Plaintiff objected to the introduction of any Air

Force documents solely on the ground that the Air Force is not the hiring authority.  Plaintiff

reasons that Defendants failed to challenge her objections, and thus Defendants are barred from

using arguments and asserting undisputed facts based on the unchallenged objections.  This does

not present a valid reason to strike these undisputed facts or the documents upon which they rely.

Plaintiff also argues that these UMFs should be stricken because they are based in part on

Defendants' Exhibit C, portions Plaintiff's own deposition.  Her reasoning is that Defendants are

attempting to use her deposition despite the fact that Plaintiff "was not given the opportunity to

review, correct and sign" the deposition.  Pl. M. to Strike at 2.  Plaintiff has failed to establish that

she was not given this opportunity.  Rather, it is undisputed that the court reporter notified

Plaintiff that her deposition was ready for review, and that Plaintiff did not pay the court

reporter's fee.  Even if she had not been allowed to review and correct her deposition, Plaintiff

has failed to point to any portion of her deposition answers that need correction.  She also argues

that her deposition should be stricken because she objected to questions that were based on Air

Force documents, and Defendants did not seek court resolution of her objections.  However,

Plaintiff has not pointed to any valid objections to any of the questions in her deposition.  These

arguments do not justify striking Plaintiff's deposition (Def. Ex. C) or any undisputed facts that

rely on her sworn deposition testimony.

UMF 1.  Plaintiff challenges this material fact on the ground that in it Defendants imply

that the Air Force has hiring authority.  Defendants neither claim nor imply the Air Force was the

hiring authority, and so this UMF will not be stricken.

UMFs 2, 3, and 6.  Plaintiff seeks to strike UMFs 2, 3, and 6 insofar as they rely on Air

Force documents, again asserting that Defendants accepted her objections to the documents.  For

the same reasons discussed above, this does not present a valid reason to strike these undisputed

facts or the documents upon which they rely.

UMF 5.  Plaintiff argues that Defendants' assertion that "the claims against APS and

Defendant Griego were found to be without merit"  misstates the outcome of her first lawsuit.

This argument is moot, as it relies on the pendency of Plaintiff's Rule 59(e) motion (Doc. No.

100) in CV 02-1509, which the Court denied by Memorandum Opinion and Order (Doc. No.

185).  Plaintiff filed a second Rule 59(e) motion (Doc. No. 186), which the Court denied (Doc.

No. 187).  Thus Defendants have not misstated anything.  Moreover, the outcome of Plaintiff's

10

previous lawsuit is immaterial in the context of this UMF, which only mentions the previous lawsuit as background for Defendants' decision to use the Air Force's competitive selection method in filling future SASI vacancies.

*UMF 8.*  In addition to the other arguments discussed above, Plaintiff moves to strike UMF 8 insofar as it relies on documents identifying candidates referred to Valley by the Air Force for the vacancy that occurred in the fall of 2002, because Griego failed to authenticate the documents.  These documents are collected in Exhibit 4 to Griego's affidavit, Def. Ex. A.  They consist of correspondence between the EEOC and APS regarding the vacant SASI positions at Valley.  Even if the Court does not consider Exhibit 4, the essential portions of UMF 8 remain: the Air Force identified certain individuals for Valley to consider in the fall 2002 vacancy; Gary Grant was one of those identified; and Plaintiff was not one of those identified.  These essential facts are supported by the affidavit of Griego, Def. Ex. A ¶ 9, and Plaintiff does not dispute these facts.

In her Reply brief (Doc. No. 167) filed in support of her motion to strike, Plaintiff objects to several paragraphs of Griego's affidavit (Def. Ex. A) as misleading and incomplete because Griego uses the terms "we" and "APS" without identifying to whom these terms refer.  Plaintiff does not dispute that Defendant Griego was acting on his own behalf and on behalf of Valley High School and APS.  Both Griego and APS are Defendants in this case.  In her Complaint (Doc. No. 1 in CV 04-646), Plaintiff alleges that Griego acted under color of state law "in his role as Principal of Valley High School, Albuquerque Public Schools."  It is immaterial whether in his affidavit Griego refers only to himself, or to himself and others, as in his role as principal he was indisputably exercising the authority of Valley and/or APS.

Also in her Reply, Plaintiff objects to Griego's assertion in paragraph 12 of his affidavit that Gary Grant was hired and served as SASI at Valley during the spring of 2003.  Plaintiff asserts that in response to her interrogatories, Griego refused to say when Grant was hired.  From this Plaintiff speculates that Griego may have hired Grant some time before Grant started serving, "in the same manner he hired Mayerstein."  Pl. Reply at 4.  Plaintiff offers no evidentiary support for this speculation.  This provides no reason to strike paragraph 12 of Griego's sworn affidavit.

The Court has considered Plaintiff's arguments and finds each of them unavailing.  The Court will deny the motion to strike in its entirety.

**2.  Merits.**  In accordance with the qualified immunity procedure, the Court first considers whether Plaintiff has established that the Defendants' conduct violated a statutory or constitutional right on any of her claims.

*a.  Gender and National Origin Discrimination Claims.*  Under Title VII of the Civil Rights Act, an employer may not fail or refuse to hire any person, or otherwise discriminate against any person in employment, "because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  Section 1981 of the Civil Rights Act provides that all persons have the same right "to make and enforce contracts . . . as is enjoyed by white citizens . . . ."  42 U.S.C. § 1981(a).  In an employment discrimination case brought under either of these statutes, in the absence of direct evidence of discrimination, the burden-shifting framework outlined in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) guides the analysis of a summary judgment motion.  *See* Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1225-26

(10th Cir. 2000).[4]  This framework applies to both gender and national origin discrimination claims.  *See* Munoz v. St. Mary-Corwin Hosp., 221 F.3d 1160, 1166-67 (10th Cir. 2000) (national origin); Sanchez v. Denver Pub. Schs., 164 F.3d 527, 531 (10th Cir. 1998) (gender).

Under the *McDonnell Douglas* analysis, if a plaintiff proves a prima facie case of discrimination, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its employment action.  *See* McDonnell Douglas Corp., 411 U.S. at 802.  If the defendant does so, the burden shifts back to the plaintiff to present evidence that the defendant's proffered reason for the employment decision was pretext.  Kendrick, 220 F.3d at 1230.

*Prima Facie Case.*  To satisfy her burden of setting forth a prima facie case of discrimination, a plaintiff must show that:  (1) she is a member of a protected class; (2) she applied and was qualified for the position for which she applied; (3) she was rejected despite her qualifications; and (4) a person not in the protected class was hired.  *See* McDonnell Douglas Corp., 411 U.S. at 802.  Defendants argue that they are entitled to summary judgment because Plaintiff cannot make a prima facie showing that she was qualified to fill either of the vacancies.

When Plaintiff sought the SASI job for the vacancy in November 2002, she was employed as SASI at a school in Georgia.  Under Air Force regulations, then, she was considered to be committed to her school in Georgia for the remainder of the 2002-2003 school year and was required to resign before she could compete for the Valley vacancy.  The same was true for the vacancy in June/July 2003.  Plaintiff has never resigned her SASI position in Georgia.  Therefore, Plaintiff has failed to show that she was qualified to fill the vacancies at Valley.

_____

[4]  The same analysis applies to all Plaintiff's claims, including those under 42 U.S.C. § 1983 and the New Mexico Human Rights Act.  *See, e.g.*, Drake v. City of Ft. Collins, 927 F.3d 1156, 1162 (!0th Cir. 1991).

Plaintiff argues that she had all the qualifications to do the SASI job, and that her principal at her high school in Georgia approved of her applying for the job in Albuquerque without resigning her position in Georgia. Plaintiff seems to be arguing for an exception to the Air Force requirement that she resign her current position, but the Air Force is not a defendant in this case, and Plaintiff has not accused anyone at the Air Force of discrimination. Also, there is no indication that a principal in one school can waive an Air Force requirement in connection with an applicant's candidacy for an AFJROTC position in another school. Further, Defendants had no obligation to make an exception for Plaintiff. Thus, even if she had all of the other qualifications for the SASI job at Valley, Plaintiff has failed to show that she met the qualification requirement that she resign from her current SASI position in Georgia. Because Plaintiff failed to establish that she was qualified, Plaintiff's gender and national origin discrimination claims fail at the prima facie stage.

*Non-discriminatory reason.* Alternatively, the Court proceeds to the next step in the *McDonnell Douglas* analysis. Defendants assert they have a legitimate, non-discriminatory reason for not hiring Plaintiff, i.e., that she was not nominated by the Air Force. To meet their burden, Defendants need only articulate through some proof a facially nondiscriminatory reason for their actions; Defendants are not obligated to litigate the merits of their reasoning, nor do they need to prove that the reasons they relied upon were bona fide. *See* Panis v. Mission Hills Bank, N.A., 60 F.3d 1486, 1491 (10th Cir. 1995); E.E.O.C. v. Flasher Co., 986 F.2d 1312, 1316 (10th Cir. 1992).

Defendants maintain that under the competitive selection procedure for filling SASI vacancies, Defendants notified the Air Force of the first SASI vacancy after Mayerstein's

employment ended in the fall of 2002.  The Air Force nominated Gary Grant and other
candidates.  Plaintiff then wrote to Griego and expressed her interest in the SASI position,
indicating in the letter that she had already made the Air Force aware of her interest, and that she
knew the Air Force had already sent its nominations to Valley.  Plaintiff was not identified by the
Air Force as a nominee for the vacant SASI position.  APS did not interview anyone not
nominated by the Air Force.

Similarly for the second vacancy, when Plaintiff expressed interest in the summer of 2003,
Griego informed her that she would need to contact the Air Force headquarters to inform them
about her interest in the position.  Plaintiff indicated that she had already contacted the Air Force
and expressed her desire to be nominated.  Once again, Valley did not interview or consider any
persons not specifically recommended by the Air Force, and Plaintiff was not one of the nominees.
Thus, Defendants assert that Plaintiff's non-hire had nothing to do with her national origin or
gender; rather, it was the result of her failure to be nominated by the Air Force.  This satisfies
Defendants' burden of production of a legitimate, non-discriminatory reason, shifting the burden
back to Plaintiff to show that the reason is pretext for discrimination.

*Pretext.*  A plaintiff can show pretext using circumstantial evidence to identify "such
weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's
proffered legitimate reasons for its action that a reasonable factfinder could rationally find them
unworthy of credence and hence infer that the employer did not act for the asserted non-
discriminatory reasons."  Proctor v. United Parcel Service, 502 F.3d 1200, 1209 (10th Cir. 2007);
Argo v. Blue Cross & Blue Shield of Kan., Inc., 452 F.3d 1193, 1203 (10th Cir. 2006).  Because
the question arises in the context of a summary judgment motion, "all doubts concerning pretext

must be resolved in plaintiff's favor," but the plaintiff must produce more than bare allegations to defeat the motion.  Morgan v. Hilti, 108 F.3d 1319, 1324 (10th Cir. 1997).

Plaintiff attempts to show pretext in two ways:  first, that Defendants applied Air Force regulations unevenly; and second, that Defendants could have hired Plaintiff under an alternative method of hiring available to Defendants.  In support of her argument that Defendants applied Air Force regulations unevenly, Plaintiff alleges that Defendants preselected Jack Martines for the second vacancy in the summer of 2003 before he resigned his SASI position in California.  In her affidavit, Plaintiff avers:  "Jack Martines, while a SASI at VHS, informed me that APS had offered him the position while he was still employed as a SASI in a California high school.  He said he had not yet resigned when he was offered the position."  Pl. Aff. ¶ 15, Pl. Ex. 1.  She also avers that "by his own admission, Col. Martines, as an APS employee, admitted to me that he was pre-selected by APS prior to being nominated by the Air Force."  Pl. Aff. ¶ 30.

This is inadmissible hearsay that cannot be considered in ruling on Defendants' motion. See Thomas v. Int'l Bus. Machs., 48 F.3d 478, 485 (10th Cir. 1995) (hearsay inadmissible at summary judgment stage).  Moreover, this assertion is contradicted by other evidence.  A fax dated March 9, 2004 from Air Force Talley to APS Schwartz regarding Air Force nominations for the AFJROTC positions at Valley High School states:  "Attached is a copy of the applicants nominated to Mr. Stan Pena on 18 Jun 03 for the Senior Aerospace Science Instructor (SASI) position at Valley High School.  Please note that Col. Jack Martines was a current instructor, but resigned his instructor position in California on 5 May 03, prior to nomination to Valley HS in accordance with AFJROTC policy for current instructors after 15 Apr each year."  Ex. 7 at 4 (attached to Griego Aff., Def. Ex. A).  This exhibit may be admissible, see Fed. R. Evid. 901(a),

but the Court need not consider it or make a credibility determination.  There simply is no admissible evidence of any inconsistency in the application of Air Force regulations by Defendants to support an inference of pretext.

Plaintiff also attempts to cast doubt on Defendants' assertion that they used the competitive selection process in filling the first vacancy by asserting that in response to her interrogatory, Griego "refused to say when [Gary] Grant was hired, which suggests he could have hired him sometime before he started serving, in the same manner he hired Mayerstein."  Pl. Reply to Mot. to Strike (Doc. No. 167) at 4.  APS hired Mayerstein using the by-name method.  However, there is no evidence, other than Plaintiff's suggestion, that Defendants hired Grant using the by-name method.

In support of her second theory of pretext, Plaintiff argues that Defendants could have hired her directly, without going through the Air Force competitive selection process.  Plaintiff contends that APS hiring policy allows candidates to apply directly to the Human Resources department, that certain school board members directed her to do just that, and that the HR department accepted her application.  *See* Pl. Aff. ¶¶ 11, 12, 13, 14, 23, 24, 25, 28 and related exhibits.  This evidence does not raise an inference that Defendants were willing to make an exception to the competitive selection process for filling SASI vacancies at Valley.  Rather, it shows that Plaintiff was trying to make an end run around the known requirement to apply through the Air Force.

Plaintiff also argues that the Air Force regulations allow applications to be made directly to a local school.  She points to an Air Force regulation which provides:

> A school official may request to fill a position by requesting a
> particular individual by-name (i.e. the individual may be from the
> local area, current teacher at the school, etc.). In cases of a by-
> name request, JRI will ensure the official is aware that they are not
> limited to selection of a by-name candidate and multiple candidates
> may be supplied by advertising of the position via the website for
> competitive selection. If school officials insist on requesting a by-
> name candidate, a letter requesting the desired candidate must be
> received by JRL. The candidate must meet all AFJROTC
> qualifications, have an approved application of file, and be
> approved by the Branch Chief for selection.

Pl. Ex. 9, SOI36-2004, dated 23 July 2002. This is not evidence that Defendants' proffered

reason is pretext. Defendants had used the by-name selection method when they hired

Mayerstein. They made a decision to use the competitive selection method, a neutral hiring

procedure, for later selections. The Court's role is not to second guess such a decision or require

that an employer make an exception to its method of filling vacancies in order to accommodate a

particular plaintiff.

Plaintiff attempts to show a discrepancy between Defendants' use of the Air Force's

competitive selection policy for filling AFJROTC vacancies and APS's general employment

policy. She presents evidence that she applied on November 4, 2002 for the first vacancy created

when Mayerstein left by sending a letter of interest to principal Griego, the APS Board president,

and the APS superintendent, Pl. Ex. 2. She also sent her applications to two APS Board

members, who directed her to apply to the school's Human Relations Department ("HRD"). Pl.

Resp. at 12; Pl. Aff. ¶¶ 10, 11, 12, 13, 14. Plaintiff applied on June 11, 2003 and again on July

10, 2003 for the second vacancy by sending letters to two APS Board members. Pl. Exhs. 3, 4, 5,

6. After being told by the Board members to apply directly to HRD, Plaintiff filled out an

"Application for Teacher/Licensed Position" on an APS form and hand delivered it to HRD on

July 16, 2003.  Plaintiff received a form letter on the same day from HR official Ronald Williams

indicating interviews are conducted by individual principals but only HR administrators may make

formal offers of employment.  Pl. Ex. 7.  This evidence does not create a material factual dispute

that Defendants' decision to use the competitive selection process was pretext, but rather shows

that Plaintiff attempted to circumvent that process.

Plaintiff also argues that she should have been considered for the vacancies at Valley

because her supervising principal at the school in Georgia where she now works authorized her to

apply for the Albuquerque vacancies.  She avers:  "In 2002 and 2003 my high school principal Dr.

William Kruskamp approved my request to apply to Valley High School for the SASI positions.

He was fully aware that my family lived in NM and that working in GA was causing me a

hardship."  Pl. Aff. ¶ 39, Pl. Ex. 1.  However, a principal from one school cannot waive an Air

Force requirement, or change another school's hiring policy.

Finally, Plaintiff alleges that Defendants recently hired Maj. Frank L. Zentner to fill a June

2007 vacancy left by Col. Jack Martines' resignation, without employing the Air Force SASI

referral method.

> I saw an AFJROTC vacancy posting for the NM 41, Valley High
> School on the AFJROTC website in June 2007.  According to Ms.
> Talley, Headquarters Air Force Junior ROTC Chief Instructor
> manager, the position has been filled by Major Frank L. Zentner.
> She said the position was advertised in the AFJROTC Website but
> was contacted by the school district and notified that they were
> doing an in school transfer so they discontinued the announcement
> for VHS SASI vacancy.

Pl. Aff., Pl. Ex. 1 ¶ 38.  Again, this statement is inadmissible hearsay.  Ms. Talley is apparently an

employee of the Air Force, which is not a party to this action.  *See* <u>Thomas</u>, 48 F.3d at 485.

Moreover, the alleged June 2007 vacancy is not at issue in this lawsuit.  Only the fall 2002 and the summer 2003 vacancies are involved.

Plaintiff has failed to prove a prima facie case of gender or national origin discrimination. Additionally, Plaintiff has failed to present evidence that Defendants' non-discriminatory reason for not hiring her is pretext for discrimination.  Thus, there is no genuine issue of material fact and Defendants are entitled to judgment as a matter of law on those claims.

*b.  Retaliation Claim.*  To establish a prima facie case of retaliation under either Title VII or Section 1981, a plaintiff must show:  (1) she engaged in protected opposition to discrimination; (2) the employer subsequently took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the adverse employment action. Somoza v. University of Denver, ___ F.3d. ___, 2008 WL 162764 *2-3 (10th Cir. Jan. 18, 2008); Argo, 452 F.3d at 1202.

A causal connection may be shown by evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action.  Haynes v. Level 3 Communications, LLC, 456 F.3d 1215, 1228 (10th Cir. 2006).  A retaliatory motive may be inferred when an adverse action closely follows protected activity.  Chavez v. City of Arvada, 88 F.3d 861, 866 (10th Cir. 1996).  However, where the adverse action does not closely follow the protected activity, the plaintiff must provide additional evidence to establish causation.  *See* Conner v. Schnuck Markets, Inc., 121 F.3d 1390, 1395 (10th Cir. 1997) (unless termination is very closely connected in time to protected activity, plaintiff must provide additional evidence beyond temporal proximity to establish causation).  A one and one-half month period may, by itself, establish causation, whereas a three-month period, standing alone, is insufficient.  Anderson

v. Coors Brewing Co., 181 F.3d 1171, 1179 (10th Cir. 1999).

Defendants claim that Plaintiff fails to establish a prima facie case of retaliation because she cannot show a causal connection between filing her first EEOC charge in June 2001 and the first action complained of in this case which took place in November 2002, some 17 months after that protected activity.  The Court agrees.  The adverse employment actions in this case are the failures to hire Plaintiff for the two vacancies, first in November 2002 and second in the summer of 2003.

Defendants argue that there is no other evidence that APS's failure to hire Plaintiff in November 2002 or in the summer of 2003 was retaliation for her previous EEOC charges or lawsuit.  Plaintiff asserts that Griego admitted Defendants did not hire her because she had sued them for discrimination.  She attempts to characterize Griego's affidavit as "stat[ing] under oath that he did not interview me despite my application because I had sued him for employment discrimination . . . ."  Pl. Resp. at 7; *see also* Pl. Resp. at 8 (Griego admitted he decided not to interview Plaintiff "based on the fact that I filed a Title VII suit CIV 02-1509 against him and that because of my lawsuit he decided to not consider my applications [for the two vacancies].").  Even viewing Griego's affidavit, Def. Ex. A ¶ 7, in the light most favorable to Plaintiff, these are not fair characterizations.  In his affidavit, Griego was explaining why Defendants adopted the competitive selection method after Plaintiff filed charges of discrimination when she was not hired in 2001.  Griego did not admit Defendants refused to interview or hire Plaintiff because of her previous charges of discrimination.

Plaintiff also argues that she has raised an inference of retaliation because Defendants admittedly adopted the competitive selection method as a reaction to Plaintiff's filing

discrimination charges against them.  However, the adoption of the competitive selection method, an indisputably neutral procedure for filling future vacancies, cannot be said to constitute an adverse action.  Moreover, it cannot be said that adoption of this method of filling vacancies caused Plaintiff not to be hired.  Plaintiff had the same opportunity as all interested persons to make her application through the Air Force.  She does not contend that the Air Force discriminated against her in any way.  Plaintiff has not shown a causal connection between her charges of discrimination and Defendants' failure to hire her, and so her retaliation claim fails at the prima facie stage.

Even if Plaintiff had established a prima facie case of retaliation, Defendants have articulated the same legitimate non-discriminatory reason for not hiring Plaintiff as they articulated in response to Plaintiff's discrimination claims, and the same analysis of pretext applies.  Thus, Defendants are entitled to summary judgment on the retaliation claim.

## VI.  CONCLUSION.

Because the Court concludes that Plaintiff has failed to establish that the Defendants' conduct violated a statutory or constitutional right, the Court does not consider whether the right was clearly established.  Plaintiff has failed to demonstrate the existence of a genuine dispute of material fact on her claims of gender or national origin discrimination, or of retaliation.  Therefore Defendants are entitled to summary judgment on all Plaintiff's claims.

THEREFORE, IT IS ORDERED:

(1) Plaintiff's "Pro Se Motion . . . of Timely Response" (Doc. No. 181) is granted;

(2) Plaintiff's "Motion . . . to Strike Defendants' 'Undisputed Material Facts' and Unverified Exhibits" (Doc. No. 156) is denied;

(3) Defendants' Motion for Summary Judgment (Doc. No. 155) is granted.

The Court will enter a separate Summary Judgment for Defendants dismissing all claims in

the Complaint in CV 04-646 contemporaneously with this Memorandum Opinion and Order.


_____

SENIOR UNITED STATES DISTRICT JUDGE